Marlon Lorenzo Brown
Name
1229358
Prison Number
Northern Nevada Correctional Center
Place of Confinement

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Marlon Lorenzo Brown____, Petitioner, )
(Full Name)                              )
                vs.                       )        CASE NO. _____
                                          )            (To be supplied by the Clerk)
N. Breitenbach, Warden__, Respondent, )
(Name of Warden, Superintendent, jailor or )
authorized person having custody of petitioner) )        **PETITION FOR A**
                                          )        **WRIT OF HABEAS CORPUS**
                and                       )        **PURSUANT TO 28 U.S.C. § 2254**
                                          )        **BY A PERSON IN STATE CUSTODY**
The Attorney General of the State of Nevada )        ( **NOT** SENTENCED TO DEATH)

-------------------------------------------------

1.  Name and location of court, and name of judge, that entered the judgment of conviction you are
    challenging: 8ᵀᴴ Judicial District, Clark County, Nevada, Judge Michelle Leavitt.

2.  Full date judgment of conviction was entered: 12 / 17 /18  .  (month/day/year) Amended 2/27/19

3.  Did you appeal the conviction? ✗ Yes ___ No.  Date appeal decided:  6 / 24 / 20 .

4.  Did you file a petition for post-conviction relief or petition for habeas corpus in the state court?
    ✗ Yes ___ No. If yes, name the court and date the petition was filed: 8ᵀᴴ Judicial
    District Court      2 / 25 / 19 .  Did you appeal from the denial of the petition for
    post-conviction relief or petition for writ of habeas corpus? ✗ Yes ___ No. Date the appeal
    was  decided: 4 / 10 / 20 . Have all of the grounds stated in this petition been presented to the
    state supreme court? ✗ Yes ___ No.  If no, which grounds have not? _____
    _____.

5.  Date you are mailing (or handing to correctional officer) this petition to this court: 4 / 10 / 23 .
    **Attach to this petition a copy of all state court written decisions regarding this conviction.**
    See Exhibits A through D

6.  Is this the first federal petition for writ of habeas corpus challenging this conviction?  ☑ Yes
    ___ No.   If no, what was the prior case number ? ___N/A___. And in what court was

the  prior action filed? ___N/A___.
    Was the prior action _N/A_ denied on the merits or _N/A_ dismissed for procedural reasons (check
    one). Date of decision: _N/A_ / ___ / ___.   Are any of the issues in this petition raised in the
    prior petition? _N/A_ Yes ___ No.   If the prior case was denied on the merits, has the Ninth
    Circuit Court of Appeals given you permission to file this successive petition? _N/A_ Yes ___ No.

7.  Do you have any petition, application, motion or appeal (or by any other means) now pending in
    any court regarding the conviction that you are challenging in this action?   ___ Yes ☑ No.
    If yes, state the name of the court and the nature of the proceedings: ___N/A___

8.  Case number of the judgment of conviction being challenged: _C-14-301675-1_.

9.  Length and terms of sentence(s): _176 months minimum to 540 months maximum._

10. Start date and projected release date: _April 1st 2016 – December 1st 2030_

11. What was (were) the offense(s) for which you were convicted: _Battery with use, Battery w use constituting dom result sub bot harm ×2, Assault w deadly, discharge of firearm ×6_

12. What was your plea? ___ Guilty  ☒ Not Guilty ___ Nolo Contendere. If you pleaded guilty
    ↳ by reason of insanity
    or nolo contendere pursuant to a plea bargain, state the terms and conditions of the agreement:

13. Who was the attorney that represented you in the proceedings in state court? Identify whether
    the attorney was appointed, retained, or whether you represented yourself *pro se* (without counsel).

| Name of Attorney | Appointed | Retained | Pro se |
|---|---|---|---|
| arraignment and plea  Damian Sheets | | ✓ | |
| trial/guilty plea  Erika Ballou / Connor Slife | ✓ | | |
| sentencing  Craig Mueller | | ✓ | |
| direct appeal  Craig Mueller | | ✓ | |
| 1st post-conviction petition  Marlon Brown | | | ✓ |
| appeal from post conviction  Marlon Brown | | | ✓ |
| 2nd post-conviction petition  Marlon Brown | | | ✓ |
| appeal from 2nd post-conviction  N/A | | | |
| 3rd post-conviction petition  Attorney Michael McAvoy Amaya | | | ✓ |
| appeal from 3rd post conviction  Michael McAvoy Amaya | | | ✓ |

2

# Table of Contents

page

(A) Relevent History (to all counts)

I. Pretrial ................................................................. 1

- Illegal arrest #1 / Excessive bail increase #1 .......... 2

- Illegal arrest #2 / Police Misconduct ..................... 3

- Fraud on the Court / No bail hold / Due Process Violation ... 4

- Constructive denial of counsel of choice / Excessive bail increase #2 ... 5

II. Trial ................................................................. 6

III. Habeas Corpus Petition #1 ................................. 9

IV. Direct Appeal ..................................................... 13

- Recusal #1 (Judge Leavitt) ................................... 14

- Recusal #2 (Judge Leavitt) ................................... 16

- Judge Tobiasson's media interview .......................... 17

- Attorney General's involvement in bail bond case ......... 18

V. Habeas Corpus Petition #2 ................................... 19

- Nevada Court of Appeals Affirmance of Petition #1's denial ... 19

- Direct Appeal order of affirmance ........................... 21

VI. Amended Petition #2 and Habeas Corpus Petition #3 ... 22

VII. Nevada Supreme Court appeal of Amended Petition #2, and Petition #3 ... 24

VIII. Procedural Bars ............................................... 25

(B) 2254 Petition

  Ground One

(A)(1) Illegal seizure (April 1st 2016) 4th Amendment violation ... 3

  (2) Due Process violation 14th Amendment ............... 3-1

(B)(1) Illegal seizure (October 3rd 2016) 4th Amendment violation ... 3-1

  (2) Due Process violation 14th Amendment ............... 3-2

  (3) Ineffective assistance of counsel 6th Amendment violation ... 3-2

# Table of Contents (Continued) 1

| | page |
|---|---|
| failure to file habeas corpus to cure Ground one's violations | 3-2 |
| (4) Constructive denial of counsel of choice 6th Amendment Violation | 3-3 |
| (5) Ineffective assistance of Appellate Counsel | |
| failure to raise Ground one's violations on Direct Appeal | 3-3 |
| Ground Two | |
| (A)(1) Ineffective assistance of trial counsel 6th Amendment violation | |
| failure to advise Petitioners expert witness on M'Naghten/Nevada insanity standard. | 5 |
| (2) Ineffective assistance of Appellate counsel 6th Amendment violation | |
| failure to raise Petitioners expert witness lack of knowledge of M'Naghten/ Nevada insanity standard on Direct Appeal. | 5 |
| (B)(1) Ineffective assistance of trial counsel 6th Amendment violation | |
| failing to secure a pretrial ruling on NGRI instructions. | 5-1 |
| (2) Ineffective assistance of trial counsel 6th Amendment violation | |
| failing to properly argue the evidence presented to support NGRI instruction | 5-1 |
| (3) Ineffective assistance of trial counsel 6th Amendment violation | |
| failure to impeach victim/impeachment of Petitioners version of events | 5-1 |
| (4) Ineffective assistance of Appellate Counsel 6th Amendment violation | |
| failure to argue/impeachment of Petitioners version of events | 5-2 |
| Ground Three | |
| (A) Excessive Bail Increases 8th Amendment violation | |
| (1) May 18th 2016, excessive increase from $60,000 to $350,000 | 7 |
| (2) December 8th 2017, excessive increase to one million dollars | 7 |
| (B) No bail hold 14th Amendment Due Process violation | 7 |
| (C) Ineffective assistance of trial counsel 6th Amendment violation | |
| failure to file habeas Corpus related to Ground Three's violations | 7-1 |

Table of Contents (Continued) 2

(D) Constructive Denial of counsel of choice 6TH Amendment violation

   State created conflicts from ground three caused counsel to withdraw    7-1

(E) Ineffective assistance of Appellate Counsel 6TH Amendment violation

   failure to raise issues from Ground Three on Direct Appeal    7-1

       Ground Four

(A) Judicial Misconduct/Bias 14TH Amendment Due Process violation

  (i) Judge Melanie Tobiasson    8

  (2) Judge Michelle Leavitt    8-1

(B) Ineffective assistance of Appellate Counsel

  Removing meritorious bias argument from direct appeal    8-2

      Ground Five

Prosecutorial and Police misconduct/fraud upon the court

  14TH Amendment Due Process violation    9

      Ground Six

    Cumulative error warrants reversal    9

Exhibits

(A) Nevada Supreme Court Direct Appeal Order of Affirmance

(B) Nevada Court of Appeals Order of Affirmance Habeas Corpus #1

(C) Clark County District Court (Judge Leavitt) ffcl and order Habeas Corpus #2

(D) Nevada Supreme Court order of affirmance Habeas Corpus Petition #3

page

①

## Relevant History (to all counts)

A review of the facts of this case is necessary as they span over nine years and have been very eventful. Understanding the procedural history involved in this case will show why the Nevada Supreme Courts rulings concerning procedural bars is in correct, and will in fact show the Nevada Supreme Court has passed upon the opportunity to correct the Constitutional violations that occurred during the prosecution of this case.

### I.                    Pretrial

On August 30th 2014, Petitioner was arrested and charged with (1) count of discharge of a firearm at or into an occupied structure, and (1) count of battery with the use of a deadly weapon constituting domestic violence. A few days later, Petitioner was arraigned in front of Justice of the Peace Melanie Tobiasson. The state added one more count of battery with the use of a deadly weapon constituting domestic violence. Judge Tobiasson then set bail at $60,000. Petitioner posted bail and was released September 8th 2014.

Preliminary hearing was originally set for a couple weeks after the arraignment, however, it was continued until October 2014. At the hearing, at which time Petitioner was represented by retained counsel Damian Sheets, the victim Margaret Aguirre's version of events changed drastically resulting in the state adding a total of 15 more charges, many of them duplicate. The State then attempted to get Petitioners bail raised to $180,000 (Attempt #1) in an effort to get him remanded into custody. Judge Tobiasson stated on the record that she was appalled that Petitioner was released on bail (despite the fact she's the one who set bail), however, she noted that Petitioner had made



all his court appearances and stayed out of trouble so therefore, she would not be raising the bail. She then added the condition of house arrest to Petitioners bail, and bound him over to District Court on all 18 felony counts.

Once in District Court, Petitioners case was assigned to Judge James Bixler. Petitioner filed a motion to be removed from house arrest as it was not an original condition of bail and Petitioner felt it was added in malice. The State filed a counter motion to increase bail (Attempt #3), this time requesting an increase to $350,000. At the December 2nd 2014, hearing on these motions, Judge Bixler denied both motions, refusing the States second request to increase bail as no reason to existed.

Judge Bixler retired soon after this hearing. Petitioner case was then transferred to Judge Jennifer Togliatti.

Illegal Arrest #1 / Excessive bail increase #1

On April 1st 2016, Judge Togliatti signed an order removing Petitioner from house arrest from April 1st-3rd 2016 to travel to California (Details will be discussed further later in the Petition), however, Petitioner was remanded into custody on this date for an alleged alchohol violation.

Petitioner never received formal notice of what he was being remanded for, nor did the state prove any violations in connection with this arrest. However, the State filed a duplicate motion to increase bail (Attempt #3), that had already been denied twice before, and Judge Togliatti granted the motion without giving any cause. Petitioner bail was excessively increased to $350,000 after he had been at liberty on bail for over a year and a half, stayed out of trouble and made all of his court appearances. Petitioner posted the $350,000 bail through Michael Shyman and

③

Easy Bail llc, then was released on house arrest June 3rd 2016.

### Illegal Arrest #2/ Police Misconduct

On October 3rd 2016, several officers from LVMPD and metro house arrest showed up to Petitioners residence and remanded him into custody without cause or warrant (The details of this arrest will be discussed later in this petition.) LVMPD told Petitioner his bail had been revoked by his bonding company. Petitioner filed a complaint shortly after being remanded against the bonding company as he felt foul play was involved. The Nevada Division of Insurance began investigating the complaint in October 2016.

Counsel for Petitioner filed a motion to address Petitioner's custody status. The first of several hearings was held on November 1st 2016. During this hearing it was relayed to the court that Petitioner was in custody due to a bond surrender. Instead of requiring the bonding company to take the correct procedures when surrendering a defendant which would be to show cause for the surrender, Judge Tagliatti allowed the State prosecutor to call the bondsman and relay to the court what was said.

At the next court hearing, the State relayed to the Court that Petitioners bond was surrendered because Petitioner allegedly threatened a co-signer and had plans to "escape" house arrest in the near future because he was in fear of being arrested in connection with a homicide that occurred in the parking lot of Petitioners place of business. No details were given, and the bondsman nor a co-signer ever came to court to corroborate anything that was said by the State. It was also said in court that Petitioners $850,000 bond had not been

④

exonerated, so even though Petitioner still had a completely valid bond outstanding in the amount of $350,000 pursuant to NRS 178.502 (2))b)), Judge Togliatti ordered Petitioner held with no bail, and said if someone was willing to post $350,000 bail, a source hearing would need to be held (November 3rd 2016 court date).

Petitioner remained illegally incarcerated despit counsel presenting an affidavit from the co-signers on Petitioners bond saying the representations by Mr. Plyman concerning them were false.

The investigation went on concerning Petitioners arrest. Counsel for Petitioner attempted to file multiple motions to get the circumstances of Petitioners surrender addressed by the court after learning from the investigators that because LVMPD officers were the ones who actually made the arrest, it did not truly qualify as a valid bond surrender, it was actually an arrest by the police. The Court refused to address Petitioners custody. In fact, when the last of these hearings was held on June 6th 2017, and Petitioner informed the court that he was being illegally imprisoned because LVMPD was the ones who made the arrest, not the bondsman, the Court ordered the custody records from the jail and continued the hearing.

Fraud on the Court / No Bail Hold / Due Process violation

On July 20th 2017, the hearing was back on Calender concerning the custody records. Judge Togliatti noted that she had received the TCR (Temporary Custody Records) from October 4th 2016, which indicated a bond surrender at 11:00 am. She then ordered Petitioners $350,000 bond exonerated without notice or cause. She also order Petitioner to be held with No Bail without notice or cause. LVMPD clearly sent over fraudulent



paperwork to the court representing that Petitioner had been surrendered on October 4th 2016 by Mr. Slyman to cover up the illegal arrest they performed the day earlier on October 3rd 2016. Petitioner never had a hearing concerning why he was arrested.

### Attempts to file Habeas Corpus Petitions

During this illegal incarceration, Petitioner attempted to file multiple petitions for writ of Habeas Corpus. Petitioner was represented by counsel who refused to file the writ in the lower court so he filed an original writ with the Nevada Court of Appeals (case # 73615-COA). The Court of Appeals declined to exercise original jurisdiction, and did not address the merits. While that petition was pending, Petitioner filed three petitions in this court, case# 2:17-CV-02644-MMD-GWF and 2:17-CV-02788-JCM-GWF (both dismissed for failure to pay filing fee or file application to proceed in Forma Pauperis), and 2:17-CV-02811-GMN-VCF (dismissed pursuant to younger abstention and failure to exhaust state remedies. This action was dismissed without prejudice).

Petitioner then filed a civil rights 1983 action (civil suit case # 2:17-CV-02396-APG-PAL) with identical causes of action as the forementioned Habeas Petitions (illegal arrest, Due Process violations, excessive bail increases, and No bail holds) The complaint remained pending a screening order.

### Constructive denial of paid counsel of choice

### Excessive bail increase #2

While illegally imprisoned, Petitioner was unable to continue running his business which caused the business to fail. This caused Petitioners retained counsel to motion to withdraw the week his trial was to commence



as Petitioner could no longer afford to pay for his defense as a result of the illegal incarceration. Judge Tagliatti granted the motion to withdraw and vacated trial at calender call against Petitioners objection. She then appointed the Public Defenders office to represent petitioner and scheduled trial for a few months after the appointment.

Petitioner relayed to new counsel Erika Ballou and Connor Slike from the Public Defenders office, the history of his custody, and asked them to file a writ of Habeas Corpus. They refused, however, they did notice Petitioner was being held with No Bail, and filed a motion to set reasonable bail or O.R. release. The motion was heard on December 8th 2017. At the hearing, Judge Tagliatti noted that yes Petitioner did have a Constitutional right to bail, and was being held with No Bail. She then increased bail again without cause to One Million dollars, all while Petitioner was still being illegally imprisoned.

II                                    Trial

Trial was set for March 3rd 2018. Counsel had minimum time to prepare and had a heavy caseload with back to back trials. The trial was transferred from Judge Tagliatti's courtroom to Judge Michelle Leavitte courtroom as Judge Tagliatti had a trial scheduled that took precedence. This case was an insanity case, so counsel filed a motion for a pre trial ruling on jury instructions having to do with the planed insanity defense. During the hearing on the motion, Judge Leavitt made representations that the proposed instructions would be given, she then with counsel's blessings deferred the official ruling until a later time.

Trial commenced, trial counsel did not cross examine majority of the states witnesses, nor did they challenge the states version of events.



In fact, trial counsel actually conceeded the States version of events, which meant impeachment of Petitioners version of events as told by Petitioners expert (and most important) witness, Dr. Boyd, against Petitioners objection.

Evidence existed in discovery in the form of a Police body cam interview with the victim the day of the incident that corroborated Petitioners version of events. Trial counsel refused to show the jury this evidence during trial. In this video, the victim says she was accidently shot in the leg as Petitioner was shooting at phantom people in the opposite direction of her and Petitioner, when they both fell to the floor. The importance of this version of events is, when it came time to settle jury instructions, Judge Leavitt, after the State presented their case without being challenged, refused to give NGRI instructions, or allow trial counsel to argue that Petitioner was not guilty by reason of insanity. Her reasoning was, even if Petitioner was in a delusion that he was in war, you still can not shoot an unarmed combatant in the leg to prevent them from fleeing (Counsels version of events). Had counsel argued that evidence was presented by Dr. Boyd, that the victim was not intentionally shot, and that Petitioner was defending himself against what he perceived was actively trying to kill him, Judge Leavitt's reasoning for not allowing the instructions would not have been anywhere close to valid. However, counsel did not argue Petitioners version of events, but instead attempted to argue why it would be justified to shoot a fleeing combatant.

At the conclusion of trial, the juries options were (1) Not guilty or (2) guilty. After a six day trial of the States uncontested version of events,



Petitioner was found guilty on all 12 counts he was tried for.

After trial, Petitioner asked counsel to file a motion for new trial and a Habeas Corpus pursuant to NRS 34.500 addressing the forementioned Constitutional violations. Counsel was busy with other trials they had scheduled back to back so a motion for new trial was not filed. Petitioner attempted to file the motion himself, which was rejected by the clerk of the court as there was counsel of record on Petitioner's case.

Trial counsel did tell Petitioner to draft the Habeas Petition and they would file it. Petitioner drafted the Habeas, raising the issue of his illegal pretrial confinement, excessive bail, no bail holds as well as counsels failure to cross examine the states witnesses and show the body cam interview with the victim corroborating Petitioners version of events for impeachment purposes. Counsel filed the petition May 3rd 2018.

At the May 22nd 2018, hearing, Judge Leavitt refused to hear the petition calling it a fugitive document, then took it off calender, even though Counsel filed it and asked Judge Leavitt to rule on it.

On the advise of counsel, Petitioner then filed a motion to dismiss Counsel, and refiled the Habeas Petition along with the motion on May 29th 2018. Judge Leavitt entered a minute order once again calling the Petition a fugitive document on June 14th 2018, then refused to set a hearing date even though the petition was filed with a motion to dismiss counsel.

When the hearing came up on the motion to dismiss counsel, Judge Leavitt made it clear that even if Petitioner was to dismiss counsel, she still would not hear the Habeas Petition calling it "inappropriate" or "improper". Petitioner then retained Craig Mueller (Appellate attorney) to file



the writ.

On September 11ᵗʰ 2018, Ms. Hinds from Craig Muellers law firm made an appearance and informed the court a motion for new trial would be filed and requested transcripts from trial. Judge Leavitt accomadated the preperation of the transcripts. Once the transcripts were produced and Mr. Mueller requested a briefing schedule be set for the motion for new trial during a November 13ᵗʰ 2018 hearing, the State all of a sudden objected saying the time had passed to file the motion. Judge Leavitt agreed with the State, so did Mr. Mueller, then in open court Mr. Mueller said he would bring the issues up on appeal. A date was then set for Petitioner to be sentenced.

### Sentencing

At Sentencing on December 11ᵗʰ 2018, Judge Leavitt pronounced several individual sentences, then sentenced Petitioner to serve an aggregate sentence of 116 to 360 months. After sentence was pronounced, Petitioner requested Judge Leavitt to set a date to hear the Habeas Corpus Petition that was previously filed but not ruled on. Mr. Mueller once again said he would take care of it, Judge Leavitt told Petitioner he was free to file an appeal or post conviction petition for relief once the judgment of conviction was filed. The judgment of conviction was filed December 18ᵗʰ 2018. A notice of appeal was filed January 16ᵗʰ 2019.

III                    Habeas Corpus Petition #1

On February 7ᵗʰ 2019, a screening order was filed by this court in the forementioned civil rights lawsuit. (3:17-cv-00396-APG-PAL). The magistrate Judge, Peggy Leen, noted that Petitioner was in the custody of Nevada Department of Corrections, and was suing for violations that

(10)

occurred prior to arrest, and while incarcerated at Clark County Detention Center. The Judge then took notice of all the forementioned Habeas Petitions that Petitioner filed in the Nevada Court of Appeals, as well as this court, with nearly identicle issues and causes of action as the civil rights complaint. The magistrate then recommended dismissal without prejudice as "These allegations fall within the core of Habeas Corpus" and "Specific Habeas Corpus Statutes and remedies clearly apply to these counts/allegations. She then cited Wilkinson 544 U.S. at 78. District Judge Andrew Gordon adopted the recommendation in its entirety.

Once Petitioner received the screening orders confirming he has been taking the correct legal actions to get relief from these violations, he immediately drafted a habeas petition once again with identicle causes of action, then filed it in Clark County District Court, as this court said Petitioners state remedies needed to be exhausted before it could entertain a 2254 petition. The petition was filed February 25TH 2019, given case # A-19-790063-W, and assigned to Judge Leavitt.

Judge Leavitt filed an amended judgment of conviction increasing the aggregate sentence she pronounced at sentencing and wrote in the original judgment by 5-15 years while it was under appeal.

After a couple of continuences, the petition came up for hearing. For this hearing, Petitioner was transported from Souther Desert Correctional Center. Also present was Jay Maynard, an attorney from Craig Muellers law firm whom made representations to the court that they would like the petition stayed pending resolution of the Direct appeal that still had yet to be filed. The problem with this is, Petitioner had spoken with Mr. Mueller a couple days before the hearing at which time it was agreed upon that the issues contained

⑪

Within the petition were solid issues that needed to be litigated, which is why Petitioner had been transported from NBOC for the hearing (Mr. Mueller put the order for transport in himself). However, sometime between the conversation with Petitioner that led to the order for transport, and the hearing, Mr. Mueller decided not to show up to litigate the petition, and sent his associate to make the representation.

Judge Leavitt then told Petitioner that he should stay the petition until his Direct Appeal has concluded, and reminded Petitioner that he only gets one post conviction petition. Petitioner then stated that he understood that you only get one post conviction petition litigated all the way through on the merits (Emphasis Added). Judge Leavitt then noted that Petitioner did not request an attorney, and asked if he would like one to review the record. Petitioner confirmed he did not want an attorney, and this is why. The petition is based on an illegal arrest that lasted 889 days. The damages resulting from this illegal arrest is substantial and led to multiple other constitutional violations. At the time of this hearing, Petitioner had attempted multiple times, to have these violations addressed and cured through multiple attorneys, and in front of more than one judge without success. Judge Leavitt herself took a properly filed petition for Habeas Corpus "off calendar" to avoid having to address the merits and prevent appellate review.

This illegal arrest ended up causing Petitioner to become indigent, which derailed his entire defensive strategy when his counsel of choice was forced to withdraw because he could no longer afford his defense. Petitioner was then appointed the Public Defenders office whom admittedly was to swamped with cases to effectively learn the facts of

⑬

Petitioners case which led to them impeaching his version of events at trial, ultimately ending up causing him to be convicted on all counts without challenge.

So, after all that, here Petitioner sits at a hearing on a Petition, that the court has successfully been avoiding having to address the merits of the issues contained within including the ineffectiveness of trial counsel that was appointed by the very same court, who now wants to appoint Petitioner yet another attorney who would most likely somehow prevent the merits from being addressed again.

Obcourse Petitioner is going to decline. This court already told Petitioner in the forementioned civil right screening order (case # 2:17-cv-02396-APG-PAL 2/7/19) that success on the claims contained within, (which are identicle to the claims currently before Judge Leavitt,) would invalidate Petitioners Judgment of Conviction. So, Petitioner requested that the petition be ruled on the merits. Judge Leavitt then denied the petition, not on the merits, but as follows

   " Claims 1-3 are not appropriate for post
     Conviction petition, they are more appropriate
     for direct appeal, and ground 4 is denied
     as he cannot carry his burden."

As forementioned, the pretrial custody claims could not have been raised on direct appeal because the arrest was not part of the trial record. As far as the ineffective assistance of counsel claims,

Judge Leavitt never ruled that counsel was effective, or not ineffective, nor did she rule that Petitioner was not prejudiced. Therefore, there was no ruling on the merits of the petition.

Petitioner filed a notice of appeal before a written order denying the petition was entered. Pursuant to Nevada Supreme Court precedence, the notice of appeal would take effect once the written order was entered.

## IV                    Direct Appeal

Appellate counsel, Craig Mueller, filed the opening brief in Petitioners Direct Appeal after the hearing on Habeas #1 (Opening brief filed July 9th 2019). In this brief, Mr. Mueller alleged that Petitioner was wrongfully denied NGRI instructions (jury), ineffective assistance of counsel in relation to counsel's failure to present a defense, Due Process violations in denying trial counsel's the ability to argue NGRI, and Judicial bias related to Judge Leavitt's daughter and allegations Judge Tabiasson made in a media interview that Judge Leavitt also commented on. Petitioner received a copy of the opening brief.

Upon reading the brief, Petitioner noticed that the version of events Mr. Mueller included in the appeal mirrored the incorrect version of events given at trial. He also recognized a name being associated with the Judicial bias claim. That name was Shane Valentine. Petitioner recognized the name as someone who was in the same unit as him during his illegal pretrial confinement. The briefing spoke of how Shane Valentine was an alleged pimp with whom Judge Leavitt's daughter was residing with, along with two convicted prostitutes, who allegedly assaulted her on Shane Valentines command while he watched. The briefing included a link to an article. Petitioner had a copy of the article sent to him.

The article was from the Nevada Current, it was published

⑭

June 6ᵗʰ 2018, and contained an interview with Judge Tobiasson (Petitioners Justice Court Judge who presided over his preliminary hearing and put him on house arrest) in which the Judge alleged that Shane Valentine was operating a underaged prostitution ring that included Judge Leavitts daughter, Morgan Leavitt, out of a clothing store, which she alleged was a front for prostitution called Top Knotch Apparel. This immediately caught Petitioners attention, because Petitioner was 100% owner of Top Knotch Apparel.

Not only did the article allege that Judge Leavitts daughter was part of the prostitution ring, she alleged the ring was made up with the daughters of police officers and Judges. Judge Leavitt was fully aware of the allegations contained within the article as she commented on the article, and her comment was published along with the article. Judge Leavitt also knew Petitioner was the owner of the business that Judge Tobiasson alleged hosted the prostitution ring that her daughter was allegedly apart of, as Petitioners pre sentence investigation report (which Judge Leavitt was required to thoroughly review before sentencing Petitioner) specifically referenced that he was the owner of Top Knotch Apparel.

At this point, regardless if the information contained within the article was true or not, any actions Judge Leavitt took in Petitioners cases would be void due to the possibility of actual, and according to the standard of implied bias, as mandated by the United States Supreme Court.

### Recusal #1

Judge Leavitt entered a minute order in Petitioners Habeas case on

(15)

July 19ᵀᴴ 2019, recusing herself "to avoid the appearance of impropriety and implied bias". This was a proper recusal as she should not of been presiding over any case involving Petitioner, when her colleague is accusing him of being involved in a crime ring that includes her daughter.

A few weeks after her recusal, Judge Leavitt also had her brothers from their family law firm (Leavitt Law Firm) file a motion in Petitioner's Direct Appeal to strike all information regarding her daughter and Shane Valentine from the briefing. The Leavitt Law Firm simultaneously recommended Petitioner's Appellate Counsel for discipline and threatened defamation lawsuits. It is unclear who relayed to Judge Leavitt the information contained in the appeal in such an expeditious manner, however, the Nevada Supreme Court allowed Judge Leavitt to illegally intervene in Petitioner's appeal (case # 79128).

Once Petitioner received and reviewed the information from the article, he immediately contacted Mr. Mueller to inform him that he was the owner of the store being spoken about in the article. Mr. Mueller had Petitioner's sister Tracy Brown fly out to Las Vegas from Georgia to meet with him at his office. At this meeting, it was relayed to Mr. Mueller that Petitioner wanted him to amend the briefing to correct the version of events, and reference to Dr. Boyd's testimony which included the correct version of events. Petitioner also wanted his illegal pretrial confinement, bail violations, as well as the constructive denial of counsel of choice allegations that were contained within the habeas petition, that Judge Leavitt said needed to be included in the direct appeal.

Mr. Mueller then attempted to extort more money from Petitioner, by

saying that he would not amend the briefing without being paid more money than originally agreed upon, in which had already been paid in full. Petitioner refused the extortion attempt, Mr. Mueller then filed a non opposition to Judge Leavitt's illegal motion, amended the brief removing the meritorious argument concerning Judge Leavitt's daughter and Shane Valentine without including any of the issues from Habeas petition #1 or correcting the version of events contained within, as Petitioner had requested. Mr. Mueller refused to even speak with Petitioner after the meeting and his failed attempt to extort him. Evidence of this conversation is included in Mr. Mueller's motion for extension for time to file a reply in the appeal.

Petitioner attempted to file a memorandum to the Nevada Supreme Court explaining that the version of events being told at trial, and in the Direct Appeal was not Petitioner's version of events, and that all the issues he wanted included were intentionally left out by Mr. Mueller. This memorandum was returned to Petitioner unfiled because Petitioner had an attorney of record. However, the memorandum was stamped by the Nevada Supreme Court Clerk, and can be viewed on the Direct Appeal docket. This evidence shows Mr. Mueller's intentional ineffectiveness, as this information would have defeated the states argument on appeal.

                              Recusal #2

Shortly after Mr. Mueller amended the appeal briefing removing the information to support the bias argument, Judge Leavitt recused from Petitioners criminal case # C-14-301675-1 on August 2nd 2019. Judge Leavitt then, while still recused, entered an order denying Habeas Petition #1 for procedural bars on August 7th 2019 (According to Nevada Supreme Court

(17)

precedence this order is void.)

The following day, Judge Michael Villani (Presiding Chief Judge of the Criminal Division), without any explanation except it appears the recusal was filed in error, entered an order reassigning Judge Leavitt to Petitioners Habeas case.

### Judge Tobiasson's Media Interview

In September 2019, an article was published about Petitioners case with the Baltimore Post Examiner. It was titled "Why is Las Vegas Judge Michelle Leavitt still on the bench?" It contains excerpts from an interview with Judge Tobiasson. This time, Judge Tobiasson went into great detail about her belief that Petitioners business was a front for prostitution, how her own daughter worked for the business, and how Shane Valentine attempted to recruit her daughter to work as a prostitute while she was employed there. The article also contained court transcripts from a hearing that Judge Tobiasson presided over, in which Judge Leavitts daughter testified under a different last name about the incident when she was assaulted by the two convicted prostitutes she was living with, under Shane Valentines command while he watched.

The most important information that came from the interview contained within this article is Judge Tobiasson's admission that she knew who Petitioner was, referred to him by name, knew he had a case in front of her, knew he owned Toy Knotch, alleged he was a pimp, and claimed his business Toy Knotch, was a front for prostitution. She also went into detail about how she would personally sit outside Toy Knotch and conduct survielance to feed information to LVMPD and ultimately the FBI in an attempt to get Petitioner arrested and shut down his business.

(18)

Attorney Generals involvement in bail bond case

Petitioner received notice that an administrative proceeding was being initiated against the bondsman Michael Slyman and Easy Bail llc, to be prosecuted by the Nevada Attorney Generals office for the fraudulent actions in connection with Petitioners bail bond transaction. As it turns out, the collateral Petitioner posted (his Aston Martin) to secure the $350,000 bond, was illegally converted and sold by Mr. Slyman while Petitioners complaint was being investigated, and before Judge Tagliatti had ordered the bond exonerated. It was also found that Mr. Slyman violated several procedural statutes during his involvement with Petitions illegal arrest.

A hearing was held on November 1st 2019, in which Mr. Slyman was able to present witnesses in his defense, and cross examine the States witnesses against him. Petitioner, as well as a co-signer on Petitioners bond was called to testify at this hearing. On December 16th 2019, The Commissioner of Insurance whom presided over this hearing entered a detailed findings of fact, conclusions of law and order. The most important information contained in this order was the fact Mr. Slyman caused the illegal arrest of Petitioner by LVMPD without cause. For his part in this Fraud, he was fined and lost his, as well as his bonding companies license to conduct bail transactions in the State of Nevada.

As of the date of the Commissions order, this was the only hearing close to Due Process Petitioner received concerning his illegal pretrial confinement. Mr. Slyman sought Judicial Review of the Commissioners findings and was denied. Her findings was affirmed in its entirety by the Clark County District Court, including the fact Petitioner was illegally

(19)

arrested. An order reflecting such was entered in case# A-20-808499-J Slyman v Division of Insurance, and # A-20-808509-J Slyman v Business of Industry.

V                    Habeas Corpus #2

Once the Commissioners ftel and order was entered affirming the fact Petitioner was arrested by LVMPD without cause, and while the appeal from Petition #1 was pending in front of the Court of Appeals along with Petitioners Direct Appeal which was pending in the Supreme Court,

Petitioner took the order as well as the information from Judge Tobiassons media interview that supported claims of Judicial bias involving Judge Tobiasson and Judge Leavitt, and filed Habeas petition #2 on January 31st 2020.

In this petition, ground one contained allegations of Due Process violations in connection with the illegal pretrial confinement of Petitioner. Grounds two and three were Judicial bias claims involving Judge Leavitt and Tobiasson. Petition also filed a motion to disqualify Judge Leavitt and reverse all her rulings. A motion was also filed in the appeal of Habeas #1 that was still pending. Chief Judge Linda Bell denied the motion before the district court without addressing the allegations, the motion before the Court of Appeals remained pending.

Affirmance of Petition #1's denial

While petition #2 was pending, The Nevada Court of Appeals affirmed the denial of petition #1 for procedural bars. The court ruled grounds 1-3 (grounds related to the two illegal seizures by LVMPD, Due Process violations that followed the seizures, excessive bail /No bail holds), as well as ground 4(a) (Constructive denial of counsel of choice), were appropriate for Direct



Appeal, the court said Petitioner did not attempt to show cause or prejudice for not raising them on Direct Appeal.

As far as the ineffective assistance of counsel claims, the court found there was not enough specific facts alleged to show entitlement to relief. The Court did not address the merits of any of the claims. The Court also did not address the motion presenting the evidence of Judge Leavitt and Tobiasson's bias, in fact the Chief Judge ordered the exhibits that included the articles to be detached and returned unfiled to Petitioner.

After the order of affirmance was entered, but before the remittitur issued, the hearing on petition #2 came up on June 2nd 2020. Petitioner was not present for the hearing. However, Judge Leavitt, despite having a clear conflict of interest, denied the petition as procedurally barred.

Once Petitioner found out Judge Leavitt failed to recuse herself he filed yet another motion to disqualify her on June 24th 2020. Judge Leavitt filed her FFCL and order denying Petition #2 the following day June 25th 2020.

Ground #1 was denied as Judge Leavitt said she did not have jurisdiction to hear the claim as it was currently on appeal before the court of appeals (Petitioners October 3rd 2016 illegal seizure and following imprisonment).

And Grounds 2 and 3, were denied under the successive bar of NRS 34.810(2) (Claims of Judicial bias of Judge Tobiasson as well as Judge Leavitt herself). None of the issues from this petition was addressed by Judge Leavitt. Petitioner filed a motion to reconsider as the remittitur from petition #1's appeal was about to issue, and grounds 2 and 3 were wrongfully denied as successive. A court date was set for the motion, the motion to reconsider was now pending.

(21)

### Direct Appeal Order of Affirmance

On June 24th 2020, the Nevada Supreme Court entered an order of affirmance in Petitioners Direct Appeal. The Judicial bias claims in regards to Judge Tobiasson's statements to the media, and Judge Leavitts daughter, were not addressed because of the earlier striking of the information (paving the way for IAAC claim).

The Supreme Court also did not address the IAC claim regarding trial counsels failure to present a defense. The court ruled the claim needed to be raised in post conviction proceedings, (Petitioner feels the trial record supported the claim making an evidentuary hearing unecessary) therefore, making this claim unavailable until the remittitur issued. As for the claim that Judge Leavitt erred by not instructing the Jury on NGRI, the Supreme Court ruled that even if Petitioner was delusional, evidence did not show that he believed hidden people or the victim posed an imminent danger that would justify his actions. The court also ruled that Petitioners expert witness, Dr. Boyd, testified that Petitioner did not consider the victim a threat, and this showed he had an appreciation for wrongfulness. This order as stated completely ignores the testimony of Petitioners expert witness, Dr. Boyd, who clearly testified that Petitioner did not intend to cause any harm to the victim, and was attempting to eliminate the threat that was trying to kill him.

The Supreme Court also commented on Dr. Boyd's statements after she viewed a video of Petitioner and the victim the day of the incident, however this video is not relevant to majority of the charges against Petitioner, as he was not armed at anytime in the video, and all but one of petitioners charges involve a weapon. The Supreme Court took Dr. Boyd's testimony

(22)

chopped it up, then pieced it back together to create an order that would conform to their decision to affirm the conviction. Trial counsel and appellate counsel's incorrect version of events also led this incorrect result, however, complete trial transcripts was part of the appeal, which contained the relevant evidence making this plain error. The remittiturs from the appeal of habeas #1 as well as Direct Appeal issued July 28th 2020.

## VI    Amended Petition #2 and Petition #3

In the motion to reconsider the denial of Petition #2, Petitioner asked Judge Leavitt to consider an Amended petition. The same day the remittiturs were filed in the appeal from Habeas #1 and the Direct Appeal, Petitioner filed the Amended Petition. The Amended petition re-argued the grounds from Habeas #1 to fix the deficiencies that were pointed out by the Nevada Court of Appeals, as well as added some new grounds not available until the date it was filed such as ineffective assistance of Appellate counsel claims.

Shortly after the Amended petition was filed, Chief Judge Bell denied Petitioners second motion to disqualify Judge Leavitt. Her order, denying the second motion was filed July 24th 2020. Petitioner filed a motion for release/bail pending resolution of the pending Habeas petition on August 7th 2020. An ex parte motion, asking to be reimbursed for the premium paid on the $350,000 bond Judge Togliatti exonerated without cause. Petitioner then retained new counsel, Michael McAvoy Amaya. Mr. McAvoy Amaya made an appearance in Petitioners Habeas Case on August 24th 2020. The State filed an opposition to the motion to reconsider on August 26th 2020. Judge Leavitts clerks contacted

(23)

Mr. McAvayAmons to ask him if he would like to supplement the motion to reconsider for the upcoming hearing. Counsel informed the Judges clerks that he would be addressing the procedural bars in a Supplement Petition and will argue why the petition was not successive at the hearing. Counsel filed a Supplemental petition on September 25th 2020. (Habeas #3), as well as another motion to disqualify Judge Leavitt (3rd motion to disqualify). A few days later on September 30th 2020, Counsel filed a motion seeking clarification on Judge Villani's order reassigning recused Judge Leavitt, back to Petitioners habeas case.

On November 3rd 2020, Chief Judge Bell denied Petitioners 3rd motion to disqualify Judge Leavitt without addressing the merits or new evidence counsel discovered and included in the motion. Once denied, Counsel filed an emergency writ of Mandamus with the Nevada Supreme Court, seeking an order to enforce Judge Leavitts recusal and vacate any and all orders that was entered after the recusal as void.

The Supreme Court declined to exercise extraordinary relief, ruling that a plain, speedy, remedy existed in appeal from denial of the petition (See Brown v Eighth Judicial District Court 475 P.3d 778 2020 Nev unpub Lexis 1899). This order was entered November 16th 2020.

On March 9th 2021 after many continuances on the pending motions and petitions, Chief Judge Bell entered a minute order in Petitioners habeas case stating that Judge Leavitt may be a potential witness in this case as allegations are being made against her, and reassigned the case outside of the Eighth Judicial District to "Avoid the appearance of impropriety under the Revised Nevada Code of Judicial conduct 2.11 (A)."

(24)

"per the Chief Justice of the Nevada Supreme Court." This order was entered without explanation or documented record on when this conversation leading up to this decision occurred, or why it occurred. Counsel was left completely out the loop. The case was then transferred to Senior Judge Steven Kosach on March 17th 2021.

Judge Kosach asked for additional briefing from the State and counsel on the bias issue, then held a hearing on May 19th 2021. At the conclusion of the hearing Judge Kosach denied the petition ruling it successive pursuant to NRS 34.810(2) without addressing any merits. He then took all pending motion off calendar, including the motion to reconsider to denial of petition #2 as successive.

VII        Nevada Supreme Court Appeal # 83314

Counsel appealed the denial of the forementioned petitions. The main issues in the appeal was whether the orders on the first two petitions were void because they were entered after Judge Leavitts July 19th recusal which would invalidate any possibility of petition #3 being successive. The second issue was whether a Judge is allowed to re-enter the proceedings after recusal as Judge Leavitt did. Counsel provided extensive caselaw supporting Petitioners position that they can not. The third issue was even if the first and second petitions orders were valid, has there been a ruling on the merits of any petition that would allow NRS 34.810(2) to apply to the issues under appeal. And lastly, even if all orders were valid and correct, which they were not, was denial proper for the grounds raised that were not available when petition #1 and petition #2 were ruled on, these grounds included ineffective assistance of appellate

(25)

Counsel claims.

A panel of the Nevada Supreme Court affirmed the denial of Habeas petition #3, however, they did not affirm on the same grounds as Judge Kosach, instead they ruled as follows

"Assuming without deciding that the denial of Brown's first petition was void because Judge Leavitt entered the orders while in recused status, Brown never the less fails to demonstrate good cause and prejudice to overcome the procedural bars that apply to his third habeas petition. Specifically, Judge Leavitt ruled on Brown's second habeas petition once she re-entered the proceedings and that order is therefore valid. Brown failed to appeal from the denial of his second habeas petition and has therefore waived his ability to bring those claims in his third petition. See NRS 34.810(2))."

The court then went on to say that the new claims in the petition are not time barred, but barred as abuse of the writ under NRS 34.810(2).

## VIII                Procedural Bars

The Nevada Supreme Court has assumed without deciding for the first time in its history, that an order is void, the Court has also disagreed with counsels argument that, if the order denying petition #1 is void, then the orders from petition #2 & #3 is void also as they were based on the validity of petition #1's order. This ruling is in error. If petition #1's order is void, like it is, then it must be



Vacated. Once the void order is vacated, the orders from petition #1 and petition #2 must be vacated also under NRCP 60b(5), which reflects FRCP 60b(5). These rules provide for relief from a final judgment or order when it based on a previous order that has been vacated. Petitioners position is, this is exactly why the Nevada Supreme Court has "assumed without deciding" an order is void for the very first time in its history, to avoid having to address the merits of these troubling claims. The court's choice to ignore its precedence is a clear pass on curing these violations.

Also, even assuming the orders were not void, there has been no rulings on the merits of any petitions in the Nevada Supreme Court, or the lower District Court, that would count as Res judicta or law of the case, that would prevent Petitioner from re raising the grounds in the third petition because petitioner failed to appeal the denial of petition #2 as the Nevada Supreme Court claims. Further, Petitioner did not appeal the denial of petition #2 for (1) because the first ground was denied as it was already under appeal before the state high court, and (2) because Petitioner filed a meritorious motion to reconsider, that was calendered for hearing, challenging the ruling that grounds 2 and 3 were barred by the successive bar of NRS 34.810(2).

This motion was continued several times up until the May 19th 2021, hearing in front of Judge Kosach, who took the motion off calender that would have invalidated the order from petition #2's denial.

So, technically, a motion to reconsider is still pending that would need to be resolved concerning whether petition #2's denial of the claims as successive is valid, if the order denying petition

(27)

#1 is assumed to be void. Nevada Supreme Court precedence clearly holds "NRS 34.810(2) applies... only where the earlier petition was dismissed on the merits," not when "appellants petition for post conviction relief was dismissed on procedural grounds." See Boatwright V Angelone, 189 Nev. 318, 322, 1993 Nev. Lexis 44, * 5.

Petition #1 was clearly dismissed on procedural grounds. So taking petition #1's order to be valid, or void, Judge Leavitts ruling that the grounds are barred by the successive bar of NRS 34.810 (2) is clearly erroneous, and Judge Kosach's decision to take the meritorious motion to reconsider Judge Leavitts denial as such, has erroneously prevented challenge to the order. The issue of the order being erroneous was raised before the Nevada Supreme Court, the Court has chosen to ignore these obvious facts, and has therefore passed upon the issue.

As far as the Nevada Supreme Courts ruling that Petitioner raises "disconcerting allegations", allegations which Petitioner failed to raise on "Direct Appeal or on appeal from the denial of his second habeas petition" this ruling is in error also. For (1) All grounds were either raised on Direct Appeal (Such as IAC claim and Judicial bias), or raised as ineffective assistance of appellate counsel (Such as Judicial bias, police misconduct ect), and (2) there was no denial or appeal of the denial of petition #2. The waiver bar of NRS 34.810 (1)(b), applies only where there was an appeal, and an issue was omitted from the appeal. Not when a Petitioner fails to appeal a denial for procedural reasons. As long as a petition is timely, a Petitioner is allowed to file successive claims not ruled on the merits, and overcome procedural bars...

State concisely every ground for which you claim that the state court conviction and/or sentence is unconstitutional. Summarize briefly the facts supporting each ground. You may attach up to two extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction. Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 1

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my _14th, 14th, 6th_ Amendment right to _Due Process, illegal Seizure, trial & Appellate Counsel Counsel of choice._ based on these facts:

(A) On April 1st 2016, while at liberty on $60,000 bond with House Arrest as a condition, an order was signed by Clark County District Court Judge Togliatti removing Petitioner from the house arrest program from the dates of April 1st - 3rd 2016, to travel to California to meet with an expert witness. At this point per house arrest log 18.35 Petitioner was no longer part of the program as you can not travel outside of Clark County while on house arrest. When Petitioner showed up to house arrest office to have his tracking device removed, the officers informed him that he would have to come back on Monday to get the device removed as it was it was the end of the day Friday, and they were about to close for the weekend. Petitioner then let the officers know his appointment was for the following afternoon (Saturday), so therefore Monday would be to late. The officers responded by saying that Petitioner should have shown up earlier, then started accusing him of being under the influence of alchohol. The officers had Petitioner take two breathalyzer test as well as a urinalysis, but refused to show him the results when he requested to see them. Petitioner was then remanded into custody under the order of house arrest supervisor Sgt. Tramba. Petitioner has never been formally notified as to why he was remanded.

This seizure was illegal in violation of the 4th Amendment. First, as per house arrest log, Petitioner was no longer part of the house arrest program once the order was signed permitting him to travel, making it impossible to violate any rules. Second, Petitioner was not under the influence of alcohol, and the State never _____.

Exhaustion of state court remedies regarding Ground 1:

3

**Ground:** proved otherwise.

1   This loss of liberty was in violation of the 14TH Amendment Due Process

2   Clause as Petitioner never received notice of an alleged violation, nor a

3   preliminary or final revocation hearing as Due Process requires. Neither LVMPD

4   or anyone from house arrest ever stepped foot in a court room to allege or

5   prove a violation, however Petitioner was still held in custody.

**Supporting Facts:**

6   Trial counsel was ineffective for failing to take the correct legal action

7   to cure these violations. Once denied Petitioner release, counsel had a duty

8   to petition for habeas Corpus pursuant to NRS 34.360. Had counsel done

9   this, it would have been found that Petitioner was illegally seized and held

10  without Due Process, he would have then been ordered released immediately.

11  The prejudice that resulted was Petitioner was falsly and maliciousy

12  imprisoned, his bail was excessively raised from $60,000 to $350,000

13  affecting his income as he was not able to operate his business during the

14  time he was illegally imprisoned. He also was not able to travel to meet

15  with his expert (and most important) witness Dr. Boyd, which greatly

16  affected the time they had together to prepare his defense.

17  Even more important, these violations was early signs of police

18  misconduct, which later became much more blatant. Petitioner posted the

19  $350,000 bond through Easy Bail llc and was released June 3rd 2016, on

20  house arrest.

21  (B)  On October 3rd 2016, while at liberty on $350,000 bail with

22  house arrest, Sgt. Tromba and several other LVMPD officers showed up to

23  Petitioners residence and informed him that he was being remanded into

24  custody. The reason given, was Petitioners bail had been revoked. This

25  was not true. Petitioner was then illegally remanded into custody without

26  probable cause or warrant. Following this illegal arrest, Sgt. Tromba

1  **Ground:** had Petitioners bondsman, Michael Shyman, come into house arrest
2  offices the following day October 4th 2016, and conspired with him to
3  cover up the illegal arrest. Sgt. Tromba had Mr. Shyman fill out an early
4  surrender (Temporary Custody Record) form to make it appear that he
5  had personally made the surrender. On this form, Mr. Shyman made it
6  look as if the surrender was due to Petitioner being arrested for another

7  **Supporting Facts:**

8  Crime while out on bail. The effect of this fraud is, it prevented any
9  hearing from being scheduled where (LVMPD) or Mr. Shyman would have to
10  show cause for Petitioners arrest and imprisonment. As a result,
11  Petitioner remained in custody without formal notice, a hearing or finding
12  of probable cause for the arrest, up until and throughout his trial. This
13  illegal custody lasted until he was transferred to Nevada Department of
14  Corrections. A total of 709 days.

15  Petitioners October 3rd 2016, arrest by LVMPD was an illegal
16  seizure in violation of the 4th Amendment. The continued illegal custody
17  without formal notice, probable cause, as well as the fraud that pre-
18  vented Petitioner from having the required Due Process hearings involved
19  with this loss of liberty, is Police Misconduct in violation of the 14th
20  Amendment Due Process Clause.

21  Trial counsels failure to take the appropriate legal action to
22  cure these Constitutional violations as they were happening is ineffective
23  assistance of counsel in violation of the 6th Amendment. Once denied
24  Petitioners release, counsel had a duty to petition for habeas Corpus
25  pursuant to Nos 34,36 ?. Had counsel done this, it would have been found
26  that Petitioner was intentionally illegally arrested then denied Due Process,
27  at which time he would have been ordered released. He would have then
28  been able to continue running his business and paying for his defense and

**Ground:** Counsel of choice.

The Prejudice that resulted due to counsels deficient performance is, Petitioner was illegally imprisoned for 809 days, including throughout his trial and sentencing. During this time his business failed as a direct result of his illegal imprisonment, making it impossible for him to continue paying for his defense, which caused his paid counsel of choice to motion

**Supporting Facts:**

to withdraw. This is a State created conflict that amounts to structural error.

The week Petitioners trial was to commence in August 2017, trial Counsel Gary Modafferi, filed a motion to withdraw. At the hearing he informed the court that Petitioner had been illegally arrested by (LVMPD) house arrest officers, and was now unable to continue paying for his defense as a result. Instead of correcting these violations or further investigating them, or at the very least appointing Counsel (Mr. Modafferi) whom was already on the case to avoid delaying trial, the court granted the request to withdraw over Petitioners objection, vacated the approaching trial date, then appointed the Public Defenders office to represent Petitioner and reset trial to begin a few months after the appointment, even though the case had been pending for going on five years and Mr. Modafferi was familiar with the facts of the case and ready for trial. This was a key factor in the ineffectiveness of Counsel at trial, Counsel did not have time to truely learn the facts of the case.

Appellate Counsel was also ineffective. Although the true circumstances of this illegal arrest was not part of the trial record because of the fraudulent actions of LVMPD and Michael Shipman, the true circumstances was discovered once an investigation was conducted by the Nevada Division of Insurance, resulting from a complaint Petitioner

1  **Ground:** filed against Mr. Slyman and his bonding company Easy Bail llc. At

2  the conclusion of this investigation, an administrative proceeding was

3  prosecuted by the Nevada Attorney Generals office against Mr. Slyman and

4  Easy Bail llc on behalf of Petitioner. This administrative proceeding was

5  cause # 17.8821, and was held on November 1st 2019. The result of this

6  hearing was, it was found that Mr. Slyman caused Petitioners illegal

7  **Supporting Facts:**

8   arrest without good cause. For his part in this fraud, his license as

9  a bondsman, as well as his bonding company, Easy Bail llc, were

10  revoked. The Nevada Commissioner of Insurance presided over this

11  hearing and entered a detailed findings of fact, Conclusions of law and

12  order with her findings on December 16th 2019. Mr. Slyman petitioned

13  for judicial review of the Commissioners order and was denied. The

14  reviewing Clark County District Court Judge affirmed the Commissioners

15  findings in full, including the fact Petitioner was illegally arrested without

16  cause. The Court entered an order reflecting such in case #A-20-808499-J

17  (Slyman v Division of Insurance) and #A-20-808509-J (Slyman v Business

18  of Industry). This order was filed after the opening brief in Petitioners

19  Direct Appeal was filed in July of 2019. Petitioner asked Appellate

20  Counsel Craig Mueller to amend the brief to include this ground. Mr.

21  Mueller refused to amend the brief without being paid more funds in direct

22  contradiction to representations his firm made at an earlier hearing in case

23  #A-19-798863-W, in June of 2019.

24      Mr. Muellers firm made representations that all grounds from Petition #1

25  that were appropriate for direct appeal would be included in the brief.

26  Had counsel included this ground in Direct Appeal the conviction would have

27  been reversed as the States intentional interference in Petitioners ability to

28  defend himself is constructive denial of counsel of choice (Structural error).

► **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

___ Yes  _✗_ No.  If no, explain why not: *The evidence to support the claims were not part of the trial record, and did not become available until after Direct Appeal*.

► **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

_✗_ Yes  ___ No.  If no, explain why not: _____

_____

If yes, name of court: *8ᵗʰ Judicial District Court*_____ date petition filed *2 / 25 / 19*.

Did you receive an evidentiary hearing? ___ Yes _✗_ No.  Did you appeal to the Nevada Supreme Court? _✗_ Yes ___ No.  If no, explain why not: _____

_____

If yes, did you raise this issue? _✗_ Yes ___ No.  If no, explain why not: _____

_____

► **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

_✗_ Yes ___ No.  If yes, explain why: _____ *New evidence, and to overcome procedural bars.*

If yes, name of court: *8ᵗʰ Judicial District Court*_____ date petition filed *1 / 31 / 20*.

Did you receive an evidentiary hearing? ___ Yes _✗_ No.  Did you appeal to the Nevada Supreme Court? ___ Yes _✗_ No.  If no, explain why not: *The issue was still under appeal in Petition #1 when Petition #2 was ruled on. Court did not have jurisdiction to hear*.

If yes, did you raise this issue? ___ Yes ___ No.  If no, explain why not: *N/A*_____

_____

► **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or sentence overturned based on this issue (such as administrative remedies)? _✗_ Yes ___ No.  If yes, explain: *An administrative proceeding was held in front of the Commissioner of insurance who confirmed in a detailed Fact that Petitioner was illegally imprisoned*.

**State concisely every ground for which you claim that the state court conviction and/or sentence is**

unconstitutional.  Summarize briefly the facts supporting each ground.  You may attach up to two extra pages stating additional grounds and/or supporting facts.  You must raise in this petition all grounds for relief that relate to this conviction.  Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 2

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my _____ Sixth _____ Amendment right to _effective assistance of counsel trial & Appellate_ based on these facts:

Petitioners trial, and Direct Appeal Counsel were ineffective in the handling of Petitioners trial and Direct Appeal.

(A) Petitioners trial counsel was ineffective when they failed to advise Petitioners expert witness, Dr. Boyd, on the M'Naghten / Nevada standard for insanity. Had counsel properly advised Dr. Boyd on this standard, when asked whether she knew the standard or whether Petitioner met it, Dr. Boyd would have been able to answer in the affirmative, and explained Petitioner was NGRI because he was under a delusion that a threat was actively trying to kill him, an shot in an attempt to defend himself by eliminating that threat. Petitioner was prejudiced by counsels deficient performance as Dr. Boyd, when asked by the State, could not give the definition of insanity as defined by Nevada standard, nor could she answer by affirmation or denial whether Petitioner met the standard. This caused her testimony that Petitioner was delusional and believed someone in the house was trying to kill him, so he shot in defense, and did not intentionally harm the victim, to be overshadowed. The prejudice that resulted was, petitioner was wrongfully denied NGRI instructions at the conclusion of evidence resulting in a guilty verdict on all counts.

Appellate Counsel was also ineffective for failing to argue this on direct appeal. The Supreme Court noted this in its order of affirmance. Had counsel argued this Petitioners conviction would have been overturned. The trial record supports this claim making an evidentuary hearing unnecessary.

Exhaustion of state court remedies regarding Ground 2:

‣ **Direct Appeal:**

**Ground:** (B)(1) Trial Counsel was ineffective for failing to secure a ruling on NGRI instructions before trial.

When hearing came before Judge Leavitt before trial on a motion for a pretrial ruling on NGRI instructions, Judge Leavitt told counsel the instructions would be given, however, instead of ensuring an official ruling was given, Counsel agreed to post pone the ruling and never

**Supporting Facts:**

ended up getting an official ruling. Counsel then proceeded to allow the State to present their case unchallenged; under the belief they would be able to argue NGRI at the close of all evidence. At the close of all evidence, Judge Leavitt denied the instructions and refused to allow counsel to argue Petitioner was NGRI, leaving Petitioner without a defense to challenge the States uncontested version of events at the conclusion of trial. This led to Petitioners conviction on all counts.

(2) Trial counsel was also ineffective for failing to correctly argue the fact that evidence was presented by Dr. Boyd that warranted NGRI instructions. Specifically that Petitioner was under delusion that a threat was actively trying to kill him so he shot in an attempt to eliminate the threat, and at no time did he intentionally harm the victim, as she was shot in the leg accidently as was he, as they both fell to the ground. This has been Petitioners version of events since day one.

(3) Instead of relaying this version of events, and impeaching the States version of events as testified by the victim, when arguing for NGRI instructions, Counsel impeached Petitioners version of events as told by Dr. Boyd by saying the victim was intentionally shot, as Petitioner believed she was a fleeing combatant that he was attempting to prevent from escaping. This version of events have never been told by Petitioner. In failing to impeach the victim, Counsel refused to show the police body cam footage to the jury which incl-

1  **Ground:** uded a statement from the victim in which she said she was
2  accidently shot. This statement directly contradicts and impeaches her
3  testimony at trial that she was intentionally shot, and would have
4  corroborated Petitioners version of events. Impeachment was important
5  because the difference in the two version of events, was the difference between
6  NGRI instructions being given or not. When Counsel conceded the states
7  **Supporting Facts:**
8  evidence against Petitioner against his objection, this ensured his
9  conviction on all counts.
10      Had Counsel secured a ruling and been denied NGRI instructions
11  counsel could have presented evidence as forementioned to dispute
12  the States case creating reasonable doubt which would have resulted in
13  a not guilty verdict. Or, if Counsel would have secured a positive ruling,
14  Counsel would have been able to argue the evidence presented proved
15  Petitioner was NGRI. (Specifically Dr. Boyd's testimony as forementioned).
16  (4) Appellate Counsel was also ineffective for failing to argue this
17  version of events and argument on direct appeal as the trial record
18  supports this claim making an evidentiary hearing unnecessary.
19      Both trial counsel Erika Ballou and Connor Slife have
20  submitted affidavits testifying that they were ineffective, at
21  Petitioners trial.
22
23
24
25
26
27
28

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

_✓_ Yes ___ No. If no, explain why not: _____

_____.

► **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

_✓_ Yes ___ No. If no, explain why not: _____

_____

If yes, name of court: _8ᵗʰ Judicial District_____ date petition filed _2 / 25 / 19_.

Did you receive an evidentiary hearing? ___ Yes _✓_ No. Did you appeal to the Nevada Supreme

Court? _✓_ Yes ___ No. If no, explain why not: _____ N/A _____

_____.

If yes, did you raise this issue? _✓_ Yes ___ No. If no, explain why not: _____ N/A _____

_____.

► **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

_✓_ Yes ___ No. If yes, explain why: _____ Ground was denied for procedural

reasons, so Petitioner re-raised the issue with new evidence and overcame procedural basis.

If yes, name of court: _8ᵗʰ Judicial District_____ date petition filed _7 / 22 / 20_.

Did you receive an evidentiary hearing? ___ Yes _✓_ No. Did you appeal to the Nevada Supreme

Court? _✓_ Yes _✗_ No. If no, explain why not: ~~Fully~~ N/A

_____.

If yes, did you raise this issue? _✓_ Yes ___ No. If no, explain why not: _____

_____.

► **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)? ___ Yes _✓_ No. If yes,

explain: _____

_____.

**State concisely every ground for which you claim that the state court conviction and/or sentence is unconstitutional. Summarize briefly the facts supporting each ground. You may attach up to two**

extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction. Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 3

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my _8ᵀᴸ 14ᵀᴸ Sixth_ Amendment right to _Excessive bail not required, Due Process, Effective assist Paid Counsel of choice._ based on these facts:

(A) Excessive Bail increases

(1) Petitioner bail was excessively raised from $60,000 to $350,000 without cause on May 10ᵀᴴ 2016. The State filed identicle motions twice before which were denied. During the hearing the State made record of two failure to appears that happened years earlier, however at the time of this hearing, Petitioner had already been at liberty on bail for 19 months, made all court appearances during this time, and had not picked up any new charges to warrant an increase as excessive. As of this hearing Petitioner was also being illegally imprisoned.

(2) Petitioners bail was excessively raised to one million dollars December 8ᵀᴴ 2017. At this hearing, Counsel requested bail be set at a reasonable amount or Petitioner be released on his own recognizance through motion, as Petitioner was being held with No bail. After acknowledging that Petitioner did have a constitutional right to bail, Judge Togliatti set bail at one million Dollars, an excessive raise from the already excessive amount of $350,000. This was maliciously raised without cause, because Petitioner brought to the courts attention he was being held without bail. Petition was also being illegally held during this hearing.

(B) No Bail Hold/Due Process violation

At a June 6ᵀᴴ 2017 hearing to reconsider bail status, Petitioner brought to the courts attention that he was being illegally imprisoned, as his October 3rd 2016, arrest was by LVMPD and without cause, in which he had not received any Due Process involving the loss of liberty. He also brought to the courts

Exhaustion of state court remedies regarding Ground 3:

▸ **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

1  **Ground:** attention that he still had a valid $350,000 bond outstanding.

2  Judge Tagliatti then ordered Petitioner held with No Bail, without any

3  explanation as to why. She then ordered Petitioners custody records from

4  his surrender, and continued the hearing. On July 28th 2017, Judge

5  Tagliatti had received the surrender paperwork from LVMPD, She noticed

6  the TCR from October 4th 2016, indicated a bond surrender. She then ordered

7  **Supporting Facts:**

8  Petitioners $350,000 bond exonerated without notice or cause in violat-

9  ion of Due Process.

10  (C) Ineffective assistance of Counsel

11     Trial Counsel was ineffective for failing to take the correct legal

12  action to cure the forementioned violations as they were happening. Once

13  (1) Petitioners bail was excessively raised, (2) Petitioner was ordered held

14  with no bail without cause, (3) Counsel was denied a reduction or the

15  setting of reasonable bail, Counsel had a duty to petition for habeas corpus

16  pursuant to NRS 34.360. Had counsel done this, it would have been found

17  that Petitioners bail was excessive, and/or he was being held with no bail

18  without cause. The violations would have then been corrected.

19  (D) Constructive Denial of Paid Counsel of Choice

20     The prejudice that resulted from the forementioned intentional and malicous

21  Constitutional violations, is constructive denial of Petitioners sixth amendment

22  right to paid counsel of choice. Because of the excessive bail increases and no

23  bail holds, combined with the illegal pretrial confinement, Petitioner was un-

24  able to continue running his business, as he either unable to make the excessive

25  one million dollar bail, or was being held without bail. He was then unable to

26  continue to pay for his defense and paid counsel of choice as a direct result

27  (Emphasis Added) of this State created conflict, which is Structural error.

28  (E) Ineffective Assistance of Appellate Counsel

1    **Ground:** Appellate Counsel was ineffective for failing to raise the aforementioned
2    issues at excessive / No bail holds, and Constructive denial of counsel of
3    choice on direct appeal. Had Counsel raised these issues, Petitioners
4    conviction would have been reversed as these violations amount to
5    Structural error.

6

7    **Supporting Facts:**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 7-2 of _____

___ Yes ✓ No. If no, explain why not: ~~Entire~~ _Ineffective assistance of counsel_
_trial and Appellate._

► **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

✓ Yes ___ No. If no, explain why not: _____

If yes, name of court: _8th Judicial District_ _____ date petition filed _2 / 25 / 19_ .

Did you receive an evidentiary hearing? ___ Yes ✓ No. Did you appeal to the Nevada Supreme

Court? ✓ Yes ___ No. If no, explain why not: _____ _N/A_ _____

If yes, did you raise this issue? ✓ Yes ___ No. If no, explain why not: _____ _N/A_ _____

► **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

✓ Yes ___ No. If yes, explain why: _Nevada Supreme Court denied as procedurally_
_barred so Petitioner re raised the issue overcoming procedural bars._

If yes, name of court: _8th Judicial District_ _____ date petition filed _7 / 22 / 22_ .

Did you receive an evidentiary hearing? ___ Yes ✓ No. Did you appeal to the Nevada Supreme

Court? ✓ Yes ___ No. If no, explain why not: _____ _N/A_ _____

If yes, did you raise this issue? ✓ Yes ___ No. If no, explain why not: _N/A_ _____

► **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)? ___ Yes ✓ No. If yes,

explain: _____

_____ .

**WHEREFORE,** petitioner prays that the court will grant him such relief to which he is

entitled in this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in

state custody.

State concisely every ground for which you claim that the state court conviction and/or sentence is unconstitutional. Summarize briefly the facts supporting each ground. You may attach up to two extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction. Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND FOUR

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my 14th, 6th Amendment right to Effective appellate counsel, impartial Judge, based on these facts:

(A) Judicial Misconduct and Bias

(1) Judge Melanie Tobiasson

The Justice Court Judge that set Petitioners bail, presided over his preliminary hearing, then placed him on house arrest after he was already at liberty on bail, spent over a year personally investigating Petitioner and his business, Taz Knotch, and requesting that the LVMPD arrest him and close down his business, which they ultimately did in violation of his constitutional right to bail and due process.

Judge Tobiasson also went public accusing Petitioner of being a Pimp, and being part of a prostitution ring that involved his trial Judges daughter, while his case was still open and the trial Judge, Michelle Leavitt, was still presiding over his case. Judge Tobiasson also implied several times that Judge Leavitt knew of this connection between Petitioner and Shane Valentine, whom she alleged was Judge Leavitts daughters pimp, and intentionally took action to seek revenge for an incident where Judge Leavitts daughter was abused by two convicted Prostitutes with whom she lived, along with Valentine, at his direction while he watched the assault. Judge Tobiasson also used her own daughter, who was employed at Taz Knotch to attempt to gather information. Judge Tobiasson had a clear bias against Petitioner and may have created or exposed a bias his trial Judge, Michelle Leavitt, had against Petitioner as well.

**Exhaustion of state court remedies regarding Ground 1:**

**Ground:** (2) Judge Michelle Leavitt

The trial Judge, Michelle Leavitt, had a known actual bias and prejudice toward Petitioner relating to allegations of her daughters involvement in a prostitution ring that Judge Tobiasson publicly linked to Petitioners business, Top Knotch.

Judge Leavitt, displayed this bias during Petitioners trial, by telling

**Supporting Facts:**

trial counsel during a hearing, on a pretrial motion, for a ruling on proposed jury instructions involving a NGRI defense. At this hearing, Judge Leavitt told trial counsel the instructions would be given, then at the close of evidence, did not allow counsel to argue that Petitioner was NGRI and did not allow the jury the option to find Petitioner NGRI, after counsel anchored Petitioners entire defense on being able to argue NGRI during closing arguments. Judge Leavitt completely closed her mind to evidence presented by Petitioners expert witness, Dr. Boyd, that supported the defense, requiring the jury to be instructed accordingly.

When Petitioner raised the issue of Judge Tobiassons allegations of Judge Leavitts daughters involvement in the prostitution ring that was linked to Top Knotch, Judge Leavitt immediately recused herself from Petitioners initial post-conviction habeas proceedings. Ten days later, with the aid of her families law firm, Judge Leavitt intervened as a third party in Petitioners direct appeal, threatened Petitioners appellate counsel with bar discipline and a defamation lawsuit if he did not pull the argument relating to Judge Leavitts daughter and Top Knotch.

Petitioners Appellate Counsel, Craig Mueller, succumbed to that pressure and filed a non-opposition to Leavitts Motion to Strike and Refer Mr. Mueller to bar discipline. One day later, Judge Leavitt recused herself

**Ground:** from Petitioners criminal case for the appearance of bias. Thereafter, Judge Leavitt convinced Chief Judge Michael villani to reverse her recusal in Petitioner's post conviction habeas matter telling Judge Villani it was filed in error. Before Judge Villani reassigned Judge Leavitt back to Petitioners case Judge Leavitt entered an order denying Petitioners habeas #1 for procedural reasons while still recused.

**Supporting Facts:**
Judge Leavitt has made serious misrepresentations of fact in regards to her daughters involvement with Shane Valentine and Judge Tobiassons allegations in numerous filings in the case. Both the Justice Court Judge and District Court Judge harbored actual and implied bias that prejudiced Petitioners trial, direct appeal, and habeas case. Judge Leavitt also took a properly filed habeas Corpus Petition "off calender" to prevent Petitioner from obtaining relief from a jury verdict prior to sentencing.

(B) Ineffective Assistance of Appellate Counsel
Petitioners Appellate Counsel was ineffective when he succumbed to pressure from Judge Leavitts threats in her motion to strike Petitioners meritorious arguments on appeal, had counsel motioned to strike the illegal motion filed by Leavitt, and presented the evidence of actual and implied bias on Appeal, Petitioners conviction would have been reversed as a partial Judicial officer is structural error, and in Petitioners case there was at least two partial Judicial officers.

► **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

___✓ Yes  ___ No.  If no, explain why not:  _N/A_

► **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

___ Yes ___✓ No.  If no, explain why not:  _Issue was Still before the Nevada Supreme Court on Direct Appeal._

If yes, name of court:  _N/A_  date petition filed _N/A_ / _____ / _____.

Did you receive an evidentiary hearing? _N/A_ Yes ___ No.  Did you appeal to the Nevada Supreme Court?___ Yes ___ No.  If no, explain why not:  _N/A_

If yes, did you raise this issue?_N/A_ Yes ___ No.  If no, explain why not:  _____

► **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

___✓ Yes ___ No.  If yes, explain why:  _New evidence was discovered_

If yes, name of court:  _8th Judicial District Court_  date petition filed _1_ / _31_ / _20_.

Did you receive an evidentiary hearing? ___ Yes ___✓ No.  Did you appeal to the Nevada Supreme Court?___ Yes ___✓ No.  If no, explain why not:  _Issue was Still before Nevada Supreme Court on Direct Appeal, Plus Judge Leavitt erroneously denied as successive, Kept rehearing motion on calender._

If yes, did you raise this issue?___ Yes ___ No.  If no, explain why not:  _N/A_

► **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or sentence overturned based on this issue (such as administrative remedies)?  ___ Yes ___✓ No.  If yes, explain:  _____

**State concisely every ground for which you claim that the state court conviction and/or sentence is**

unconstitutional.  Summarize briefly the facts supporting each ground.  You may attach up to two extra pages stating additional grounds and/or supporting facts.  You must raise in this petition all grounds for relief that relate to this conviction.  Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 5

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my ___14TH___ Amendment right to ___Due Process___,

based on these facts:

Prosecutorial and Police misconduct / Fraud upon the Court. The LVMPD and the Clark County District Attorney's who prosecuted Petitioner's case engaged in egregious misconduct in violation of Petitioners constitutional right to bail and due process causing the early surrender of Petitioners bail without cause, committing fraud in the preparation of official custody documents to cover up their misconduct, which caused Petitioner to become financially insolvent causing Petitioners case to shift between to many attorney's for trial and appellate counsel to have effectively defended his case, and present his appeal. The State also committed fraud upon the court misrepresenting facts regarding the surrender of Petitioners bail. Further, the LVMPD and Clark County District Attorney were well aware of Petitioner's ownership of Toy Knotch, and the connections between Toy Knotch and Judge Leavitts daughter, and Judge Tobiassons personally motivated investigation into Petitioners and his business. Despite that knowledge the State failed to notify Petitioners trial counsel of the conflict, and allowed Leavitt to proceed in Petitioners case despite knowing of her bias. The State also failed to apprise the Nevada Supreme Court of Judge Leavitts' clear conflict of interest, failed to move to strike Leavitt's motion that argued from the position of the state and included misrepresentations of fact, and later participated in Petitioners Pro Se habeas proceeding without demanding Leavitt recuse herself, denying Petitioner Due Process.

Ground Six

Cumulative error warrants reversal.

Exhaustion of state court remedies regarding Ground 2:

▸    Direct Appeal:

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

___ Yes  ✓ No.  If no, explain why not:  *Evidence was not part of trial record*
*or Available when direct appeal was filed.*

▸   **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

✓ Yes  ___ No.  If no, explain why not:  *N/A*

If yes, name of court:  *8ᵗʰ Judicial District*  date petition filed  *2 / 25 / 19*.

Did you receive an evidentiary hearing?  ___ Yes  ✓ No.  Did you appeal to the Nevada Supreme

Court?  ✓ Yes  ___ No.  If no, explain why not:  *N/A*

If yes, did you raise this issue?  ✓ Yes  ___ No.  If no, explain why not:  *N/A*

▸   **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

✓ Yes  ___ No.  If yes, explain why:  _____

If yes, name of court:  *8ᵗʰ Judicial District Court*  date petition filed  *9 / 25 / 20*.

Did you receive an evidentiary hearing?  ___ Yes  ✓ No.  Did you appeal to the Nevada Supreme

Court?  ✓ Yes  ___ No.  If no, explain why not:  *N/A*

If yes, did you raise this issue?  ✓ Yes  ___ No.  If no, explain why not:  *N/A*

▸   **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)?  ___ Yes  ✓ No.  If yes,

explain:  _____

**State concisely every ground for which you claim that the state court conviction and/or sentence is
unconstitutional.  Summarize briefly the facts supporting each ground.  You may attach up to two**

_____
*N/A*
(Name of person who wrote this
complaint if not Plaintiff )

_____
(Signature of Plaintiff)

_____
4/18/23
(Date)

_____
*N/A*
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)


## DECLARATION UNDER PENALTY OF PERJURY

I understand that a false statement or answer to any question in this declaration will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

Executed at _Northern Nevada Correctional Center_ on _4/18/23_ .
                        (Location)                                                    (Date)

_____
(Signature)

_____
1289358
(Inmate prison number)

9-2

Exhibit A

Nevada Supreme Court
Direct Appeal
Order of Affirmance

Exhibit A

## IN THE SUPREME COURT OF THE STATE OF NEVADA

MARLON BROWN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77962

**FILED**

JUN 24 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

### *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree kidnapping with a deadly weapon, assault with a deadly weapon, battery with a deadly weapon constituting domestic violence, battery by strangulation constituting domestic violence, two counts of battery with a deadly weapon causing substantial bodily harm, and six counts of discharging a firearm from or within a structure.[1] Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge. Appellant Marlon Brown pleaded not guilty by reason of insanity and raises two main issues related to the district court's decision not to instruct the jury on that defense.[2]

First, Brown contends that because he presented evidence that he was insane at the time of the offense, the district court abused its discretion by not giving an insanity defense instruction. Nevada law

---

[1]Pursuant to NRAP 34(f)(1), we conclude that oral argument is not warranted.

[2]Claims of ineffective assistance of counsel should be raised in postconviction proceedings in the district court in the first instance and are generally not appropriate for review on direct appeal. *Feazell v. State*, 111 Nev. 1446, 1449, 906 P.2d 727, 729 1995). Appellant has not demonstrated that any issues of ineffective assistance of counsel are appropriate for review on direct appeal in the instant case. We therefore decline to address appellant's ineffective-assistance claims.

SUPREME COURT
OF
NEVADA

(O) 1947A

20-23454

"permits a finding of legal insanity only if at the time of the killing, a delusional state: (1) rendered the defendant incapable of knowing or understanding the nature of his act, *i.e.*, that he was killing a human being, or (2) prevented the defendant from appreciating the wrongfulness of his act, *i.e.*, that the killing was not justified under the law." *Blake v. State*, 121 Nev. 779, 801-02, 121 P.3d 567, 581 (2005) (Becker, C.J., concurring in part and dissenting in part); *see also* NRS 174.035(6) (providing the plea of not guilty by reason of insanity). The insanity defense is "very narrow," and a defendant is entitled to jury instructions on it only if he presents evidence that he acted under a delusion and his "delusion, if true, would justify the commission of the criminal act." *Finger v. State*, 117 Nev. 548, 577, 27 P.3d 66, 85 (2001) (clarifying the standard of legal insanity announced in *M'Naghten's Case*, 8 Eng. Rep. 718, 10 Cl. & Fin. 200 (1843)).

Here, the victim testified that she and Brown were romantically involved. One night, Brown began acting aggressively. When the victim attempted to leave the apartment, Brown threw her down and choked her. Brown then retrieved a firearm and dragged the victim throughout the apartment looking for unknown individuals. Brown repeatedly demanded the victim tell him where the unknown individuals were hiding and ordered her to tell them to come out. Brown shot the victim once in each leg and threatened to kill her and himself. During this incident, before fleeing the scene, he fired several gunshots into a closet and shot out a window in the apartment.

In his case-in-chief, Brown presented evidence that he suffered from post-traumatic-stress disorder as a result of his military service. When settling jury instructions, Brown claimed he acted under the delusion that he was in combat. However, Brown's expert testified that she did not know if Brown thought he was in combat; rather, he believed "bad people"

were in the residence, but not necessarily enemy soldiers. The expert stated that during the incident Brown knew who the victim was and did not consider her a threat. Further, the expert did not know the legal standard for insanity or whether Brown met it.[3] *See Finger*, 117 Nev. at 577, 27 P.3d at 85 ("[W]e stress the need for experts and juries to be correctly advised on the M'Naghten standard."). Thereafter, the district court concluded that Brown had not presented evidence to support facts that, if true, would have justified him seizing, strangling, and shooting the victim or firing gunshots within the residence. *See id.* ("Unless a defendant presents evidence that complies with [the M'Naghten] standard, he or she is not entitled to have the jury instructed on the issue of insanity."); NRS 174.035(6) (providing that "the burden of proof is upon the defendant to establish by a preponderance of the evidence" the insanity defense elements). The record supports the district court's conclusion because the evidence did not show that Brown, even if delusional, believed the victim or hidden people posed an imminent danger that would justify his actions.[4] *Cf. Finger*, 117 Nev. at

---

[3]After viewing a video that depicted part of the incident, the expert testified that Brown did not appear to be looking for anyone hidden in the apartment, and his actions showed aggression, impulse control problems, and poor judgment consistent with post-traumatic-stress disorder. This testimony only supported a diminished capacity defense, which is not recognized in Nevada. *See Crawford v. State*, 121 Nev. 744, 757, 121 P.3d 582, 591 (2005) ("[T]he technical defense of diminished capacity is not available in Nevada."); *see also Diminished Capacity*, *Black's Law Dictionary* (11th ed. 2019) (defining "diminished capacity" as "[a]n impaired mental condition—short of insanity—that is caused by intoxication, trauma, or disease and that prevents a person from having the mental state necessary to be held responsible for a crime").

[4]Because the evidence did not support instructing the jury on the insanity defense, the district court did not err by precluding Brown from arguing that he was not guilty by reason of insanity. *See Lloyd v. State*, 94

SUPREME COURT
OF
NEVADA

(O) 1947A

576, 27 P.3d at 85 ("Persons suffering from a delusion that someone is shooting at them, so they shot back in self-defense are insane under *M'Naghten*."). Moreover, the expert's testimony that Brown did not consider the victim a threat showed he had an appreciation of wrongfulness. Therefore, we conclude the district court did not abuse its discretion.[5] *See id.* at 577, 27 P.3d at 85 (rejecting the proposition "that any evidence of mental illness or aberration requires the jury to be instructed on the issue of legal insanity"); *see also Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) (regarding jury instructions, "[a]n abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason.").

  Second, Brown argues that the district court exhibited judicial bias when rejecting his proposed insanity defense. We disagree. Specifically, Brown takes issue with the district court's skepticism about Brown's argument that his conduct would be justified because it would be permitted while clearing a residence in combat. Judges are presumed to be unbiased and the party asserting bias has the burden to present sufficient

---

Nev. 167, 169, 576 P.2d 740, 742 (1978) ("[I]t is improper for an attorney to argue legal theories to a jury when the jury has not been instructed on those theories."). Brown was, however, able to argue that he lacked the mens rea to commit the crimes.

 [5]We also conclude Brown's argument that the district court's refusal to instruct the jury on the insanity defense or allow him to argue the theory to the jury violated his federal due process rights lacks merit. As we noted, Brown argued that he lacked the required mens rea but did not meet his burden to prove legal insanity. *See Kahler v. Kansas*, 140 S. Ct. 1021, 1037 (2020) (providing that due process does not require a particular test for legal insanity; rather, determining the relationship between legal insanity and criminal culpability "is a project for state governance, not constitutional law").

grounds to rebut that presumption.  *Hogan v. Warden*, 112 Nev. 553, 559-60, 916 P.2d 805, 809 (1996).

Here, the district court had not closed its mind to the consideration of evidence.  *See Cameron v. State*, 114 Nev. 1281, 1283, 968 P.2d 1169, 1171 (1998) ("[The] remarks of a judge made in the context of a court proceeding are not considered indicative of improper bias or prejudice unless they show that the judge has closed his or her mind to the presentation of all the evidence.").  Rather, when Brown argued that the rules of engagement would justify his actions, the district court commented that no evidence established those rules.  The district court's skepticism that a soldier is permitted to shoot an unarmed individual may be seen as a comment on the lack of evidence presented by the defense on the rules of engagement.  Thus, Brown has not shown any bias or partiality that would warrant relief where the district court merely discussed the trial evidence and whether any evidence supported Brown's insanity defense. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:    Hon. Michelle Leavitt, District Judge
       Craig Mueller & Associates
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

5

Exhibit B

Nevada Court of Appeals
Order of Affirmance
Habeas Corpus Petition #1

Exhibit B

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

MARLON LORENZO BROWN,
Appellant,
vs.
BRIAN WILLIAMS, WARDEN,
Respondent.

No. 79128-COA

FILED

APR 1 0 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

### ORDER OF AFFIRMANCE

Marlon Lorenzo Brown appeals from an order of the district court denying a postconviction petition for a writ of habeas corpus filed on February 25, 2019. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Brown contends the district court erred by denying his claim that trial counsel were ineffective. To demonstrate ineffective assistance of trial counsel, a petitioner must show counsel's performance was deficient in that it fell below an objective standard of reasonableness and prejudice resulted in that there was a reasonable probability of a different outcome absent counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown. *Strickland*, 466 U.S. at 697. A petitioner's claims must be supported by specific factual allegations that are not belied by the record and, if true, would entitle him to relief. *Cf. Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984).

To the extent Brown claimed his counsel were ineffective for not cross-examining the victim at trial regarding the differences between her

20-13748

recorded statements to police and her testimony at trial, Brown failed to specify how the victim's versions of events differed or how it would have affected the outcome of the trial. And to the extent Brown claimed his counsel were ineffective for not cross-examining other witnesses, he failed to specify what questions counsel should have posed, what the responses would have been, or how they would have affected the outcome of the trial. Brown's bare claims did not demonstrate he was entitled to relief. Trial counsels' statements to the trial court that they would be ineffective if the court did not continue closing arguments did not amount to specific facts that would demonstrate Brown was entitled to relief. We therefore conclude the district court did not err by denying this claim.

Brown also claimed he was subjected to illegal post-arrest seizure that violated his 4th and 14th Amendment rights, he was subject to excessive bail in violation of his 8th Amendment rights, and the trial court denied him his right to counsel of his choice. Claims that could have been raised in a direct appeal must be dismissed absent a demonstration of cause for the failure to raise them on direct appeal and actual prejudice. NRS 34.810(1)(b)(2). Brown's claims were appropriate for direct appeal, and he did not attempt to demonstrate cause and prejudice.

For the first time in his reply to the State's response below, Brown contended that these claims were ineffective assistance of counsel claims. Brown's contention lacked merit. First, it is belied by the record. Brown clearly raised some claims of ineffective assistance of trial counsel, demonstrating he knew how to indicate that a claim was one of ineffective assistance. His remaining claims were devoid of any reference to ineffective assistance or even a claim of something counsel should or should not have done. Second, claims may not be raised for the first time in a reply, because

it deprives the State of the opportunity to respond. *See Barnhart v. State*, 122 Nev. 301, 303, 130 P.3d 650, 651 (2006) ("Generally, the only issues that should be considered by the district court . . . on a post-conviction habeas petition are those which have been pleaded in the petition or a supplemental petition and those to which the State has had an opportunity to respond."). We therefore conclude the district court did not err by denying these claims as procedurally barred. Accordingly, we

ORDER the judgment of the district court AFFIRMED.[1]

_____, C.J.
Gibbons

_____, J.
Tao

_____, J.
Bulla

cc:  Hon. Michelle Leavitt, District Judge
     Marlon Lorenzo Brown
     Attorney General/Carson City
     Clark County District Attorney
     Eighth District Court Clerk

---

[1]In light of our disposition, we deny Brown's pro se motions filed in this appeal.

# Exhibit C

Clark County District Court
ffcl and order (Petition #2)
(Judge Leavitt)

# Exhibit C

Electronically Filed
06/25/2020 1:21 PM

*(signature)*

CLERK OF THE COURT

1   **FCL**
    STEVEN B. WOLFSON
2   Clark County District Attorney
    Nevada Bar #001565
3   ALEXANDER G. CHEN
    Chief Deputy District Attorney
4   Nevada Bar #10539
    200 Lewis Avenue
5   Las Vegas, Nevada 89155-2212
    (702) 671-2500
6   Attorney for Plaintiff

7

8                          DISTRICT COURT
                      CLARK COUNTY, NEVADA

9   THE STATE OF NEVADA,

10                  Plaintiff,

11        -vs-                                CASE NO:   A-19-790063-W

12  MARLON LORENZO BROWN,                     DEPT NO:   XII
    aka Marlon Brown,  #2633113
13

14                  Defendant.

15        **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

16                  DATE OF HEARING:  JUNE 2, 2020
                    TIME OF HEARING:  12:00 PM
17

18          This cause having come on for hearing before the Honorable Michelle Leavitt, District

19  Judge, on June 2, 2020, the Petitioner pro se, not appearing, the Respondent being represented

20  by Steven B. Wolfson, District Attorney, through Colleen Baharav, Esq., Chief Deputy

21  District Attorney, and the Court having considered the matter, including briefs, transcripts,

22  and documents on file herein, now therefore, the Court makes the following findings of fact

23  and conclusions of law:

24  //

25  //

26  //

27  //

28  //

1

**STATEMENT OF THE CASE**

2     On October 22, 2014, MARLON LORENZO BROWN, aka Marlon Brown (hereinafter

3 "Petitioner"), was charged by way of Information with: Count 1 – BATTERY WITH USE OF

4 A DEADLY WEAPON CONSTITUTING DOMESTIC VIOLENCE (Category B Felony –

5 NRS 200.481, 200.485, 33.018); Counts 2 & 3 – BATTERY WITH USE OF A DEADLY

6 WEAPON CONSTITUTING DOMESTIC VIOLENCE RESULTING IN SUBSTANTIAL

7 BODILY HARM (Category B Felony – NRS 200.481, 200.485, 33.018); Counts 4-7 –

8 DISCHARGING FIREARM AT OR INTO OCCUPIED STRUCTURE, VEHICLE,

9 AIRCRAFT, OR WATERCRAFT (Category B Felony – NRS 202.285); Counts 8-14 -

10 DISCHARGE OF FIREARM FROM OR WITHIN A STRUCTURE OR VEHICLE

11 (Category B Felony – NRS 202.287); Count 15 – BATTERY CONSTITUTING DOMESTIC

12 VIOLENCE – STRANGULATION (Category C Felony – NRS 200.481, 200.485, 33.018);

13 Count 16 – ASSAULT WITH A DEADLY WEAPON (Category B Felony – NRS 200.471);

14 and SECOND DEGREE KIDNAPPING WITH USE OF A DEADLY WEAPON (Category

15 B Felony – NRS 200.310, 200.330, 193.165).

16     On November 26, 2014, Petitioner filed a pre-trial Petition for Writ of Habeas Corpus.

17 The State filed its Return on December 24, 2014. On January 15, 2015, Petitioner filed his

18 Reply. On January 27, 2015, Petitioner's pre-trial Petition was denied.

19     On December 30, 2015, Petitioner filed a Motion to Continue Jury Trial. The State filed

20 its Opposition on January 6, 2016. Petitioner filed his Reply that same day. On January 7,

21 2016, Petitioner's motion was granted.

22     On March 6, 2017, Petitioner filed an additional Motion to Continue Trial. On March

23 16, 2017, Petitioner's motion was granted.

24     On July 25, 2017, Petitioner filed a Notice of Intent to Rely on Plea of Not Guilty by

25 Reason of Insanity Pursuant to NRS 174.035(5). On February 22, 2018, Petitioner filed a

26 Motion for Pre-Trial Ruling on Proposed Jury Instructions Relating to Not Guilty by Reason

27 of Insanity. The State filed its Opposition on March 5, 2018. On March 7, 2018, Petitioner

28 was allowed to correct his plea.

2

1        Jury trial commenced on March 6, 2018. That same day, the State filed an Amended

2  Information charging Petitioner with: Count 1 – BATTERY WITH USE OF A DEADLY

3  WEAPON CONSTITUTING DOMESTIC VIOLENCE (Category B Felony – NRS 200.481,

4  200.485, 33.018); Counts 2 & 3 – BATTERY WITH USE OF A DEADLY WEAPON

5  CONSTITUTING DOMESTIC VIOLENCE RESULTING IN SUBSTANTIAL BODILY

6  HARM (Category B Felony – NRS 200.481, 200.485, 33.018); Counts 4-9 –DISCHARGE

7  OF FIREARM FROM OR WITHIN A STRUCTURE OR VEHICLE (Category B Felony –

8  NRS 202.287); Count 15 – BATTERY CONSTITUTING DOMESTIC VIOLENCE –

9  STRANGULATION (Category C Felony – NRS 200.481, 200.485, 33.018); Count 16 –

10  ASSAULT WITH A DEADLY WEAPON (Category B Felony – NRS 200.471); and

11  SECOND DEGREE KIDNAPPING WITH USE OF A DEADLY WEAPON (Category B

12  Felony – NRS 200.310, 200.330, 193.165).

13        On May 29, 2018, Petitioner filed a Motion to Dismiss Counsel and Proceed Pro Per

14  and a Petition for Writ of Habeas Corpus. On June 14, 2018, this Court issued a Minute Order

15  recognizing that Petitioner's Petition was a fugitive document and took the matter off calendar.

16  On July 10, 2018, Petitioner withdrew his Motion to Dismiss Counsel.

17        On December 11, 2018, Petitioner was sentenced to the Nevada Department of

18  Corrections as follows: as to Count 1 – thirty-two (32) to eighty-four (84) months; as to Count

19  2 – thirty-six (36) to one hundred twenty (120) months consecutive to Count 1; as to Count 3

20  – thirty-six (36) to one hundred twenty (120) months concurrent with Count 2; as to Count 4

21  – thirty-six (36) to one hundred twenty (120) months consecutive to Count 3; as to Count 5 –

22  thirty-six (36) to one hundred twenty (120) months concurrent with Count 4; as to Count 6 –

23  thirty-six (36) to one hundred twenty (120) months concurrent with Count 5; as to Count 7 –

24  thirty-six (36) to one hundred twenty (120) months concurrent with Count 6; as to Count 8 –

25  thirty-six (36) to one hundred twenty (120) months concurrent with Count 7; as to Count 9 –

26  thirty-six (36) to one hundred twenty (120) months concurrent with Count 8; as to Count 10 –

27  twelve (12) to thirty-six (36) months consecutive to Count 9; as to Count 11 – twelve (12) to

28  forty-eight (48) months concurrent with Count 10; as to Count 12 – thirty-six (36) to one

1  hundred twenty (120) months plus a consecutive term of thirty-six (36) to ninety-six (96)

2  months for use of a deadly weapon concurrent with Count 11 for a total aggregate sentence of

3  one hundred sixteen (116) to three hundred sixty (360) months. The Judgement of Conviction

4  was filed on December 17, 2018.

5        On December 27, 2018, Petitioner filed a Notice of Appeal. On February 27, 2019, this

6  Court filed an Amended Judgment of Conviction. This appeal is still pending before the

7  Nevada Supreme Court.

8        On February 25, 2019, Petitioner filed a Petition for Writ of Habeas Corpus (Post-

9  Conviction). The State filed its Response on April 17, 2019. The Petitioner filed his Reply on

10  May 16, 2019. On June 18, 2019, the Court denied Petitioner's Petition. The Court filed its

11  Findings of Fact, Conclusions of Law and Order on August 7, 2019.

12        On June 24, 2019, Petitioner filed a Notice of Appeal. A decision is still pending before

13  the Nevada Supreme Court.

14        On August 2, 2019, this Court issued a minute order stating that it would be recusing

15  itself from Petitioner's case. On August 8, 2019, this Court issued a minute order stating that

16  the recusal was issued in error.

17        On September 10, 2019, Petitioner filed a Motion to Disqualify Judge Michelle Leavitt

18  and Vacate/Reverse All Her Judgments and Rulings Including Judgment of Conviction in Case

19  C-14-301675-1. The Court issued an Affidavit in response to Petitioner's Motion of September

20  25, 2019. On October 9, 2019, Petitioner filed a Supplement to his Motion. On October 15,

21  2019, Chief Judge Linda Bell denied Petitioner's Motion. The Court issued its Decision and

22  Order on October 23, 2019.

23        On January 31, 2020, Petitioner filed the instant second Petition for Writ of Habeas

24  Corpus (Post-Conviction). The State filed its Response on April 27, 2020. On May 21, 2020,

25  Petitioner filed his Reply. On June 2, 2020, this matter came on for argument and this Court

26  rules as follows:

27  //

28  //

1    **STATEMENT OF THE FACTS**

2    On August 30, 2014, the victim called 911 and reported she had been shot in the legs

3    by Petitioner, her boyfriend of one year and he shot her he fled the scene still armed. A record

4    check revealed Petitioner had two outstanding warrants for battery domestic violence and open

5    container in a vehicle from Justice Court.

6    An officer in the area saw Petitioner with no shirt and blood covered pants, he was

7    taken into custody. When asked if he understood his rights he answered, "I want to wait."

8    Petitioner had a cut on his foot that was bleeding and minor scratches on his chest and back.

9    There were strands of long dark hair stuck to his mouth, chin and neck area and dried blood

10    on his chest. Petitioner was transported to the emergency room.

11    An officer who responded to UMC Trauma discovered the victim been shot on her left

12    thigh and her right shin, which broke her leg. She required surgery to repair the leg. She also

13    suffered significant trauma to the left side of her face and nose. She was in pain and visibly

14    upset and reported that Petitioner had been drinking and using narcotics. They were both in

15    her bedroom and he became paranoid and erratic. He believed people were in the apartment,

16    specifically the guest bedroom. Petitioner got so paranoid; he armed himself with a

17    semiautomatic handgun. He got up and pulled her out of bed by her hair and held her in front

18    of himself as if he was using her as a shield to search the apartment. When they got to the

19    bedroom, he opened fire into the closet and while shooting, he pulled her down on the bed. As

20    they landed on the bed, she felt the pain of being shot. Sometime during the incident, he hit

21    her on the head with the gun. Her injuries corroborated her claims.

22    Officers recovered a small semi-automatic firearm with blood in the crime area. There

23    was a blood trail from the victim's apartment to where Petitioner was taken into custody.

24    Inside the apartment officers found a handgun holster in the master bedroom. They

25    noted the large amount of blood in the living room and the hallway floor. There was a large

26    amount of blood in the guest bedroom floor and the mattress. There were four bullet holes in

27    the guest bedroom's closet door, one of the bullets had penetrated the wall and entered another

28    apartment, and another bullet struck the plaster on the exterior of another apartment, but did

1    not penetrate the wall.

2                                           **ANALYSIS**

3    I.      **THIS COURT DOES NOT HAVE JURISDICTION TO HEAR**

4            **PETITIONER'S CLAIM 1, AS IT IS CURRENTLY BEFORE THE NEVADA**

5            **SUPREME COURT.**

6        "Jurisdiction in an appeal is vested *solely* in the supreme court until the remittitur issues

7    to the district court." Buffington v. State, 110 Nev. 124, 126, 868 P.2d 643, 644 (1994). While

8    an appeal is pending district courts do not have jurisdiction over the case until remittitur has

9    issued. Id.

10       Here, Petitioner claims that he was illegally incarcerated pending his trial date. Petition

11    at 7. However, Petitioner made this claim in his first Petition for Writ of Habeas Corpus, which

12    is currently on appeal before the Nevada Supreme Court. See Petition, filed February 25, 2019,

13    p. 8-9. Therefore, this Court does not have jurisdiction over Petitioner's claim and the Petition

14    is denied.

15    II.    **PETITIONER'S SECOND PETITION IS PROCEDURALLY BARRED.**

16        **a. Petitioner's Petition is Successive and/or an Abuse of Writ.**

17        NRS 34.810(2) reads:

18                 A second or successive petition *must* be dismissed if the judge or

19                 justice determines that it fails to allege new or different grounds for relief and that the prior determination was on the merits or, if

20                 new and different grounds are alleged, the judge or justice finds that the failure of the petitioner to assert those grounds in a prior

21                 petition constituted an abuse of the writ.

22    (emphasis added). Second or successive petitions are petitions that either fail to allege new or

23    different grounds for relief and the grounds have already been decided on the merits or that

24    allege new or different grounds but a judge or justice finds that the petitioner's failure to assert

25    those grounds in a prior petition would constitute an abuse of the writ. Second or successive

26    petitions will only be decided on the merits if the petitioner can show good cause and

27    prejudice. NRS 34.810(3); Lozada v. State, 110 Nev. 349, 358, 871 P.2d 944, 950 (1994).

28    //

V:\2014\444\45\201444445C-OPPS-(BROWN, MARLON)-001.DOCX

The Nevada Supreme Court has stated: "Without such limitations on the availability of post-conviction remedies, prisoners could petition for relief in perpetuity and thus abuse post-conviction remedies. In addition, meritless, successive and untimely petitions clog the court system and undermine the finality of convictions." Lozada, 110 Nev. at 358, 871 P.2d at 950. The Nevada Supreme Court recognizes that "[u]nlike initial petitions which certainly require a careful review of the record, successive petitions may be dismissed based solely on the face of the petition." Ford v. Warden, 111 Nev. 872, 882, 901 P.2d 123, 129 (1995). In other words, if the claim or allegation was previously available with reasonable diligence, it is an abuse of the writ to wait to assert it in a later petition. McClesky v. Zant, 499 U.S. 467, 497-98 (1991). Application of NRS 34.810(2) is mandatory. See Riker, 121 Nev. at 231, 112 P.3d at 1074.

Petitioner filed his first Petition for Writ of Habeas Corpus on February 25, 2019. On June 18, 2019, the Court denied this Petition on the merits and issued a detailed Findings of Fact, Conclusions of Law and Order. Petitioner appealed and that appeal is still pending before the Nevada Supreme Court. Petitioner previously raised the same claim regarding alleged illegal incarceration. See Petition, filed February 25, 2019, p. 8-9. Petitioner's claims in his First Petition were denied on the merits and, thus, Petitioner's current claims are successive. NRS 34.810(2). As this Petition is successive, pursuant to NRS 34.810(2), it cannot be decided on the merits absent a showing of good cause and prejudice. NRS 34.810(3).

Petitioner's other claims constitute an abuse of the writ. McClesky, 499 U.S. at 497-98. Petitioner's claims of judicial bias were available to him prior to the filing of his direct appeal. Petitioner was the registered owner of a local business called "Top Knotch." See Petitioner's Exhibit B. On June 6, 2018, prior to Petitioner's sentencing in this matter, an article was published alleging that the Honorable Melanie Tobiasson was alleging that Top Knotch was a front for a prostitution ring and that her daughter as well as the daughter of the Honorable Michelle Leavitt were frequenting this establishment. See Petitioner's Exhibit C. As the registered owner of the business, Petitioner was on notice after June 6, 2018, that there may have been potential for bias in his case. Petitioner's First Petition was filed on February 25, 2019, after Petitioner was on notice of this claim. Therefore, Petitioner's failure to raise

1  these claims of judicial bias in his First Petition constitute an abuse of the writ and Petitioner's

2  claims are denied.

3    **b. Petitioner's Substantive Claims are Waived as they Should have been**

4    **Raised on Direct Appeal.**

5  Under NRS 34.810,

6    1. The court *shall* dismiss a petition if the court determines that:

7    (a)    The petitioner's conviction was upon a plea of guilty or
      guilty but mentally ill and the petition is not based upon an

8    allegation that the plea was involuntarily or unknowingly entered

9    or that the plea was entered without effective assistance of
      counsel.

10    . . .

11    unless the court finds both cause for the failure to present the
      grounds and actual prejudice to the petitioner.

12

13  (emphasis added). Further, substantive claims are beyond the scope of habeas and waived.

14  NRS 34.724(2)(a); Evans v. State, 117 Nev. 609, 646–47, 29 P.3d 498, 523 (2001); Franklin

15  v. State, 110 Nev. 750, 752, 877 P.2d 1058, 1059 (1994), disapproved on other grounds,

16  Thomas v. State, 115 Nev. 148, 979 P.2d 222 (1999).

17    As discussed, supra, Petitioner's claims of judicial bias were available to him when his

18  direct appeal was filed. Petitioner declined to raise these claims on direct appeal and, thus,

19  these claims are waived for habeas review. Therefore, Petitioner's claims are denied.

20  **III.   PETITIONER  CANNOT  DEMONSTRATED  GOOD  CAUSE  TO**

21    **OVERCOME THE PROCEDURAL BARS.**

22    A showing of good cause and prejudice may overcome procedural bars. "To establish

23  good cause, appellants *must* show that an impediment external to the defense prevented their

24  compliance with the applicable procedural rule. A qualifying impediment might be shown

25  where the factual or legal basis for a claim was not reasonably available at the time of default."

26  Clem v. State, 119 Nev. 615, 621, 81 P.3d 521, 525 (2003) (emphasis added). The Court

27  continued, "appellants cannot attempt to manufacture good cause[.]" Id. at 621, 81 P.3d at

28  526. To find good cause there must be a "substantial reason; one that affords a legal excuse."

1  Hathaway v. State, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003) (quoting Colley v. State, 105
2  Nev. 235, 236, 773 P.2d 1229, 1230 (1989)). Clearly, any delay in the filing of the petition
3  must not be the fault of the petitioner. NRS 34.726(1)(a).

4          A petitioner raising good cause to excuse procedural default rules must do so within a
5  reasonable time after the alleged good cause arises. See Pellegrini, 117 Nev. at 869-70, 34
6  P.3d at 525-26 (holding that the time bar in NRS 34.726 applies to successive petitions); see
7  generally Hathaway, 119 Nev. at 252-53, 71 P.3d at 506-07 (stating that a claim reasonably
8  available to the petitioner during the statutory time period did not constitute good cause to
9  excuse a delay in filing). A claim that is itself procedurally barred cannot constitute good
10  cause. Riker, 121 Nev. at 235, 112 P.3d at 1077. See also Edwards v. Carpenter, 529 U.S. 446,
11  453 120 S. Ct. 1587, 1592 (2000).

12          As demonstrated, supra, Petitioner's claims of judicial bias were available as early as
13  June 6, 2018. However, Petitioner did not raise these claims until January 31, 2020,
14  approximately eighteen months after the claim became available to him. Petitioner cannot
15  demonstrate good cause to ignore his procedural defaults because all of the necessary facts
16  and law were available for a timely filed direct appeal as well as Petitioner's First Petition for
17  Writ of Habeas Corpus and he has not even alleged an impediment external to the defense
18  prevented raising this claim at the appropriate time. As Petitioner's claims were available at
19  the time he filed his first Petition for Writ of Habeas Corpus, Petitioner's claims cannot
20  constitute good cause to overcome the procedural bars and Petitioner's Petition is dismissed.

21  **IV.    PETITIONER CANNOT DEMONSTRATE PREJUDICE.**

22          In order to establish prejudice, the defendant must show "'not merely that the errors of
23  [the proceedings] created possibility of prejudice, but that they worked to his actual and
24  substantial disadvantage, in affecting the state proceedings with error of constitutional
25  dimensions.'" Hogan v. Warden, 109 Nev. 952, 960, 860 P.2d 710, 716 (1993) (quoting United
26  States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982)). "Bare" and "naked"
27  allegations are not sufficient to warrant post-conviction relief, nor are those belied and repelled
28  by the record. Hargrove v. State, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984). "A claim is

9

1    'belied' when it is contradicted or proven to be false by the record as it existed at the time the

2    claim was made." Mann v. State, 118 Nev. 351, 354, 46 P.3d 1228, 1230 (2002).

3         Petitioner cannot demonstrate prejudice because he has not presented facts sufficient to

4    establish judicial bias. In Nevada, a judge is presumed to be not biased. Goldman v. Bryan,

5    104 Nev. 644, 764 P.2d 1296 (1988) (overturned on other grounds, see Halverson v.

6    Hardcastle, 123 Nev. 29, 163 P.3d 428 (2007)). The burden is on the party asserting bias "to

7    establish sufficient factual grounds warranting disqualification." Goldman, 104 Nev. at 644,

8    764 P.2d at 1296. A motion to disqualify will be insufficient where there are no facts that

9    support a reasonable inference that a judge entertained bias against the defendant. Id. at 650,

10   at 1300. Therefore, a defendant's bare allegation of bias is not sufficient to overcome the

11   presumption that the court is not biased. Id. at 644, at 1296; Sonner v. State, 112 Nev. 1328,

12   1335, 930 P.2d 707, 712 (1996). "[R]emarks of a judge made in the context of a court

13   proceeding are not considered indicative of improper bias or prejudice unless they show that

14   the judge has closed his or her mind to the presentation of all the evidence." Cameron v. State,

15   114 Nev. 1281, 1283, 968 P.2d 1170, 1171 (1998).

16        Here, Petitioner's bare allegations are not sufficient to overcome the presumption

17   against judicial bias. Regarding the Honorable Melanie Tobiasson, her comments regarding

18   Petitioner were positive and reflect a lack of bias against him. See Petitioner's Exhibit B.

19   Therefore, Petitioner's claim as to bias by Judge Tobiasson is belied by the record. Mann, 118

20   Nev. at 354, 46 P.3d at 1230. Moreover, Petitioner has failed to demonstrate any bias on behalf

21   of this Court. In fact, the Honorable Michelle Leavitt specifically stated that she was not

22   involved in any comments that may have been made by Judge Tobiasson. See Petitioner's

23   Exhibit C. Further, Chief Judge Linda Bell determined that there was no reason for this Court

24   to recuse itself because Petitioner could not demonstrate a conflict of interest which would

25   prevent this Court from being fair and impartial. Therefore, Petitioner has failed to

26   demonstrate prejudice and his Petition is denied.

27   //

28   //

V.    **THERE WAS NO CUMULATIVE ERROR.**

Petitioner further claims cumulative error warrants relief. Petition at 10. "Relevant factors to consider in evaluating a claim of cumulative error are (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." Mulder v. State, 116 Nev. 1, 17, 992 P.2d 845, 855 (2000). Petitioner did not contest the evidence at trial, instead, Petitioner elected to try and prove that he was not guilty by reason of insanity. Therefore, the issue of guilt was not close. Further, Petitioner has failed to allege a single instance of error and, therefore, his claim of cumulative error fails. See United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."). Furthermore, any errors that occurred at trial were minimal in quantity and character, and a defendant "is not entitled to a perfect trial, but only a fair trial." Ennis v. State, 91 Nev. 530, 533, 539 P.2d 114, 115 (1975). Petitioner's claim is without merit and his Petition is denied.

### ORDER

THEREFORE, IT IS HEREBY ORDERED that the Petition for Post-Conviction Relief shall be, and it is, hereby denied.

DATED this _____ day of June, 2020.

Dated this 25th day of June, 2020.

188 D64 E237 66C1
DISTRICT JUDGE

Michelle Leavitt

STEVEN B. WOLFSON
Clark County District Attorney
Nevada Bar #001565

BY _Hagar Fuppeed_ #10114 for

ALEXANDER G. CHEN
Chief Deputy District Attorney
Nevada Bar #10539

11

1

## CERTIFICATE OF SERVICE

2    I certify that on the _____ day of _____, 2020, I mailed a copy of the foregoing

3    proposed Findings of Fact, Conclusions of Law, and Order to:

4

5                        MARLON LORENZO BROWN

6                        BAC#1209358

7                        P.O. BOX 208 (SDCC)

8                        INDIAN SPRINGS, NEVADA 89070

9

10                    BY _____
                              Secretary for the District Attorney's Office
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    14F13786X/AC/ss/mlb/dvu

# Exhibit D

Nevada Supreme Court
Order of affirmance
Habeas Corpus Petition #3

# Exhibit D

IN THE SUPREME COURT OF THE STATE OF NEVADA

MARLON LORENZO BROWN,
Appellant,
vs.
BRIAN WILLIAMS, WARDEN,
Respondent.

No. 83314

**FILED**

NOV 3 0 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying appellant Marlon Lorenzo Brown's postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Steven R. Kosach, Senior Judge.

In December 2018, following a jury trial before the Honorable Michelle Leavitt, District Judge, Brown was convicted of 12 felony counts arising from a domestic violence incident. Brown appealed his conviction. In his direct appeal, among other things, Brown raised claims of judicial bias against Judge Leavitt. Certain portions of Brown's judicial bias claim included unsavory allegations against Judge Leavitt's family. Judge Leavitt moved to strike those portions of the briefing as scandalous. Brown filed a nonopposition to Judge Leavitt's motion. This court granted the motion and did not address any claim of judicial bias based on Brown's allegations related to Judge Leavitt's family.

While Brown's appeal was pending before this court, he filed a postconviction petition for a writ of habeas corpus in the district court. Brown's petition did not raise any claim of judicial bias against Judge Leavitt. In June 2019, Judge Leavitt denied Brown's habeas petition in a minute order, ruling that Brown failed to demonstrate ineffective assistance

22-37462

of trial counsel and that the remainder of his claims were not appropriately raised.

After the minute order issued, Judge Leavitt recused herself from both Brown's criminal case and the habeas proceedings. Each were assigned to a different department. After her recusal, Judge Leavitt entered a written order denying Brown's habeas petition. The next day, the Honorable Michael Villani, District Judge, the presiding criminal judge, issued a minute order stating that Judge Leavitt's recusal had been made in error and reassigning the matter to Judge Leavitt.

With the matter back before Judge Leavitt, and while both Brown's direct appeal and the appeal from the denial of his first habeas petition were still pending, Brown filed a motion to disqualify Judge Leavitt and to vacate all of her prior rulings, including the judgment of conviction.[1] In his motion, Brown renewed his allegations of judicial bias against Judge Leavitt—including his allegations related to her family. In response, Judge Leavitt filed an affidavit acknowledging that she had recused herself from Brown's criminal case due to a conflict with Brown's attorney. However, Judge Leavitt asserted that she had no bias or prejudice against Brown and that she could impartially preside over his habeas proceedings. The Honorable Linda Bell, Chief District Judge, denied Brown's motion to disqualify, concluding that Judge Leavitt's rulings were not evidence of bias or prejudice and that there were insufficient factual grounds to establish a conflict of interest.

---

[1]The court of appeals eventually affirmed the denial of Brown's first habeas petition. *Brown v. Williams*, No. 79128-COA, 2020 WL 1849273 (Nev. Ct. App. Apr. 10, 2020) (Order of Affirmance).

In January 2020, and with his appeals still pending, Brown filed a second habeas petition.  In his second petition, Brown brought the same allegations of judicial bias against Judge Leavitt that he had raised previously on direct appeal and in his first motion to disqualify but did not raise in his first petition.[2]  Brown also brought a second motion to disqualify Judge Leavitt from the habeas proceedings, once again raising the allegations of judicial bias.  Judge Leavitt denied the second habeas petition, finding that Brown's second petition was successive to his first habeas petition and that he had not overcome this procedural bar by demonstrating good cause and prejudice.  After Judge Leavitt denied Brown's second habeas petition, Chief Judge Bell denied Brown's second motion to disqualify, ruling that Brown had once again failed to establish sufficient grounds to warrant disqualifying Judge Leavitt.  Brown did not appeal the denial of his second habeas petition.

In August 2020, Brown filed a third postconviction habeas petition.  In addition to raising new claims, Brown's third petition once more alleged judicial bias against Judge Leavitt.  He simultaneously brought a third motion to disqualify Judge Leavitt.  In response, Judge Leavitt filed an affidavit stating, for the first time, that her recusal from Brown's habeas proceedings had been inadvertent.  Chief Judge Bell denied Brown's third motion to disqualify, ruling that the third motion raised the same claims as the previous two and that Brown was therefore really requesting that the court reconsider its denial of those motions.  Because Brown had failed to

---

[2]This court affirmed Brown's conviction on direct appeal. *Brown v. State*, No. 77962, 2020 WL 3474157 (Nev. June 24, 2020) (Order of Affirmance).

JPREME COURT
OF
NEVADA

1947A

request leave to file for reconsideration of the denial of his previous motions, Chief Judge Bell denied Brown's third motion to disqualify as untimely.

In March 2021, Chief Judge Bell issued a minute order changing the venue of Brown's habeas proceedings. The order noted that Judge Leavitt may be a potential witness in the proceedings and reassigned the case to the Honorable Steven R. Kosach, Senior Judge. Judge Kosach denied Brown's third habeas petition, determining that it was procedurally barred as successive to his second petition and that an evidentiary hearing was unwarranted. This appeal followed.

## DISCUSSION

Brown argues the district court erred in denying his third postconviction habeas petition as successive. He argues that Judge Leavitt's order denying his first petition is void because she entered it while she was recused. Brown further argues that the denials of his second and third petitions were based upon those petitions being successive to the first petition, rather than on the merits. Because neither the second nor third petition were preceded by an adjudication of his habeas claims on the merits, Brown argues, his third petition is not procedurally barred. We disagree.

This is Brown's third postconviction habeas petition and as such it is subject to multiple procedural bars.[3] "In reviewing the district court's application of the procedural default rules, we will give deference to its factual findings but will review the court's application of the law to those facts de novo." *Rippo v. State*, 134 Nev. 411, 415-16, 423 P.3d 1084, 1093 (2018) (internal quotation marks omitted).

---

[3]We note that Brown's third petition is not time-barred because it was timely filed pursuant to NRS 34.726(1).

NRS 34.810(1)(b) establishes a waiver bar by which a court is required to dismiss a petition if the petitioner's conviction was the result of a trial and the grounds for relief could have been raised at trial, on direct appeal, in a prior habeas petition, or in a previous proceeding. For second or successive petitions, NRS 34.810(2) establishes two separate procedural bars. First, a petition is subject to the successive procedural bar if the judge determines that (1) the petition failed to allege new or different grounds for relief, and (2) the prior adjudication of the petitioner's claim or claims was on the merits (successive bar). *Id.* Second, if the petition alleges new or different grounds for relief, the petitioner's failure to assert those grounds in a prior petition may constitute an abuse of the writ (abuse-of-the-writ bar). *Id.* To overcome any of these procedural bars, a petitioner must demonstrate both good cause and prejudice. NRS 34.726(1); NRS 34.810(3).

"[T]o demonstrate good cause, a petitioner must show that an impediment external to the defense prevented him or her from complying with the state procedural default rules." *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). Such an impediment "may be demonstrated by a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials, made compliance impracticable." *Id.* (internal quotation marks omitted). Prejudice is demonstrated by an error that works to the petitioner's actual and substantial disadvantage. *See Hogan v. Warden*, 109 Nev. 952, 960, 860 P.2d 710, 716 (1993).

Here, assuming without deciding that the denial of Brown's first petition was void because Judge Leavitt entered the order while in recused status, Brown nevertheless fails to demonstrate good cause and prejudice to overcome the procedural bars that apply to his third habeas

petition. Specifically, Judge Leavitt ruled on Brown's second habeas petition once she had reentered the proceedings and that order is therefore valid. Brown failed to appeal from the denial of his second habeas petition and has therefore waived his ability to bring those claims in his third petition. *See* NRS 34.810(1)(b).

As to the new claims Brown brings in the instant petition, each were available to him to bring either on direct appeal or in a prior habeas petition. Accordingly, his failure to bring those claims earlier constitutes an abuse of the writ. *See* NRS 34.810(2). We acknowledge that Brown raises disconcerting allegations in his third petition. However, Brown failed to bring these claims on direct appeal or on appeal from the denial of his second habeas petition and he has not shown the good cause and prejudice needed to overcome the procedural bars his third petition implicates. Those procedural bars must be adhered to. Accordingly, we

ORDER the judgment of the district court AFFIRMED.[4]

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Herndon

---

[4]To the extent the parties' additional arguments are not addressed herein, we have reviewed those arguments and we conclude they do not warrant a different result.

cc:    Chief Judge, The Eighth Judicial District Court
        Hon. Steven R. Kosach, Senior Judge
        McAvoy Amaya & Revero, Attorneys
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk